[Nos. A060822, A064753. First Dist., Div. Three. Feb. 28, 1995.]

STANTON ROAD ASSOCIATES, Plaintiff and Appellant, v.
PACIFIC EMPLOYERS INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Thelen, Marrin, Johnson & Bridges, Peter Anderson, Steven L. Hock and Michelle R. Harbottle for Plaintiff and Appellant.

Larson & Burnham, James L. Wraith, Michael K. Johnson, Morton, Lulofs & Allen, Larry E. Lulofs, Karen D. Marcus, Clausen, Miller, Gorman, Caffrey & Witous, James T. Ferrini, Stephen D. Marcus, James R. Swinehart, Susan Condon, O'Melveny & Myers, Martin S. Checov and Jennifer L. Isenberg for Defendants and Respondents.

Bullivant, Houser, Bailey, Pendergrass & Hoffman, Lisa E. Lear, Douglas G. Houser and M. Taylor Florence as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**CORRIGAN, J.**—Stanton Road Associates (Stanton), a limited partnership, appeals from two judgments entered after the trial court sustained the demurrers of three insurers without leave to amend and granted summary adjudication in favor of a fourth. We ordered the appeals consolidated and now affirm both judgments.

### BACKGROUND

This case involves a continuous property loss and claims made against multiple insurance companies that, concurrently or successively, provided first party property coverage for real property located at 860 Stanton Road in Burlingame. Stanton seeks to recover from defendant insurers damages caused by environmental contamination from an adjacent dry-cleaning plant.

At all times relevant until September 1986, the Stanton Road property was owned by the Curley Bates Company. The property was insured by three different insurers during that period: St. Paul Surplus Lines Insurance Company (St. Paul) from April 1, 1983, through July 1, 1986; Integrity Insurance Company (Integrity)[1] from July 1, 1983, through July 1, 1986; and United National Insurance Company (United National) from July 1, 1984, through July 1, 1986.

Stanton was formed and the Stanton Road property transferred to it in September 1986. Pacific Employers Insurance Company (Pacific) issued a

---

[1] Pursuant to Insurance Code section 1063 et seq., in March 1987 California Insurance Guarantee Association (CIGA) became obligated to assume and discharge various liabilities and responsibilities owed by Integrity to its policyholders. Thus, while we refer to the Integrity *policy*, the defendant sued on that policy is CIGA.

Home Insurance Company (Home) was also named as a defendant, but settled with Stanton after the allegations against it were dismissed with prejudice.

policy covering the property effective October 1, 1986, which was canceled for nonpayment of premiums effective March 6, 1988.

Stanton discovered the property was contaminated in August 1988, when it learned that soil samples taken by a prospective purchaser the previous August had been found to contain hazardous substances. In its third amended complaint, the operative pleading here, Stanton alleged as follows: "[T]he contamination of the Stanton Road Property occurred over a number of years preceding Stanton's discovery of the loss in August of 1988. Stanton was delayed in discovering the contamination because the contamination unobtrusively affected the soil and groundwater of the Stanton Road Property, the contamination was caused by the illicit and secretive release of contaminants by an adjoining landowner, the contamination occurred in an untravelled and unused alley between the Stanton Road Property and the adjoining landowner, and the contamination was caused by individuals who were unrelated to Stanton and beyond Stanton's control. The contamination of the Stanton Road Property was not obvious or readily apparent to Stanton and in fact could only be discovered by soil and water sampling. Stanton was delayed in finding out about the samples taken in August of 1987 because the prospective purchaser was acting independently of Stanton in taking the samples and did not inform Stanton that the samples were being taken. *For all of these and other reasons, Stanton's delay in discovering the contamination, and the loss caused thereby, was reasonable.*" (Italics added.)

In February or March of 1989, Stanton gave notice of the loss to St. Paul, United National, Integrity, and Pacific. On November 1, 1989, Stanton filed this action against each of the insurers, alleging causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief. Stanton subsequently amended its complaint three times, each time alleging that it first discovered the loss in August of 1988.

United National, St. Paul, and CIGA demurred to the third amended complaint, arguing that (1) Stanton lacked standing, and (2) the complaint was barred by the one-year statute of limitations provided by Insurance Code section 2071[2] and the insurance contracts. The superior court agreed on both grounds and sustained the general demurrers without leave to amend. Stanton filed a timely appeal from the ensuing judgment.

Pacific subsequently moved for summary adjudication of Stanton's first-party insurance claims against it. The court granted the motion on the ground

---

[2]Section 2071 of the Insurance Code, which sets forth California's standard form fire insurance policy, states in relevant part that "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless . . . commenced within 12 months next after inception of the loss."

that Stanton's losses manifested after Pacific's policy had lapsed. Stanton dismissed its remaining causes of action against Pacific and filed a timely appeal. We ordered the appeals consolidated and address them, in turn, below.

## DISCUSSION

### I. *Prudential-LMI Com. Insurance v. Superior Court*

Because the dispositive law on both appeals is stated in *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (hereafter *Prudential-LMI*), we discuss the case in some detail.

*Prudential-LMI*, like this case, involved progressive damage to property insured over the years by successive insurers. The plaintiffs had insured their property with four different insurers between 1971 and 1986. In November 1985, while replacing floor covering, they discovered an extensive crack in the foundation and floor slab of their building. (*Prudential-LMI, supra,* 51 Cal.3d. at p. 680.) Prudential-LMI denied the plaintiffs' claim and, when sued, sought summary judgment on the grounds, inter alia, that: (1) it was not liable on the loss because its policy had expired in 1980, more than five years before the plaintiffs' discovery, and (2) the action was barred by the one-year statutory and contractual limitations period. (*Id.* at pp. 679-681; see Ins. Code, § 2071.) The Court of Appeal issued a writ of mandate directing summary judgment in favor of the insurer. (51 Cal.3d at p. 681.)

Addressing the first of these arguments, the Supreme Court adopted the "manifestation rule" for allocating indemnity between successive first party property insurers for progressive losses spanning multiple policy periods. (*Prudential-LMI, supra,* 51 Cal.3d at pp. 678-679, 699.) Under the manifestation rule, liability for a progressive loss falls solely on the insurer on the risk at the time the loss manifests, i.e., at "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Id.* at p. 699.)

The court further held the standard one-year limitation period on first party insurance suits begins to run on the date of "inception" of the loss, which, it held, is the same as the date of manifestation. (*Prudential-LMI, supra,* 51 Cal.3d at pp. 678, 686-687, 699.) This limitation period is equitably tolled, however, "from the time the insured files a timely notice . . . to the time the insurer formally denies the claim in writing." (*Id.* at pp. 678, 687-691.)

Based on these principles, the Supreme Court concluded the plaintiffs should be allowed to amend their complaint to allege, if they could, that their delayed discovery of the loss was reasonable and their claim timely filed. (*Prudential-LMI*, *supra*, 51 Cal.3d at p. 700.) In so doing, the court acknowledged that the record on appeal indicated manifestation had occurred in 1985, after Prudential-LMI's policy had expired. If so, of course, Prudential-LMI was not liable: "Whether Prudential must then indemnify plaintiffs for any covered claim under the policy *necessarily depends on whether that insurer was the carrier of record on the date of manifestation of the loss*." (*Ibid.*, italics added.) However, noting that the plaintiffs had joined other insurers and that the record on appeal did not conclusively establish the date of manifestation, the court expressly declined to speculate as to the date manifestation of loss occurred. (*Ibid.*)[3]

With these principles in mind, we turn to the specifics here.

## II. *The Demurrers Were Properly Sustained Under Prudential-LMI*

As noted above, the trial court sustained the demurrers of United National, St. Paul, and CIGA (sued on the Integrity policy, *ante*, fn. 1), in part on the ground that Stanton's claims against these insurers were time barred by the policies' contractual and statutory one-year limitation provision.[4] We agree, both for the court's stated reason and because Stanton's allegations establish that its loss manifested after these policies had expired.

### A. *Standard of Review*

A general demurrer "searches the complaint" for a failure to state a cause of action as a matter of law. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 610-611 [116 Cal.Rptr. 919].) On review from an order sustaining a general demurrer, " '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]

---

[3]Throughout its briefs on appeal, Stanton repeatedly asserts the Supreme Court "ruled that the action should go to trial against the insurer." Not so. The court merely remanded to permit the plaintiffs to amend their complaint, if possible, to show their discovery of the loss was reasonable and that they filed suit within one year thereof. (*Prudential-LMI*, *supra*, 51 Cal.3d at pp. 687, 693, 700.)

[4]The court also found Stanton lacked standing to bring suit on the policies. Because of our resolution of the manifestation and limitations issues, we need not reach the question of standing; nor, for the same reason, do we reach CIGA's further contention that Stanton failed to allege a covered claim within the meaning of Insurance Code section 1063.1.

When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Tensor Group* v. *City of Glendale* (1993) 14 Cal.App.4th 154, 159 [17 Cal.Rptr.2d 639].)

Unless failure to grant leave to amend is an abuse of discretion, we must affirm the judgment of the trial court if it is correct on any theory. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

B. *Stanton's Loss Manifested After Expiration of the Policy Periods*

■ As noted above, Stanton has consistently maintained it first learned of the contamination in August 1988. The third amended complaint further alleges that, because the contamination was clandestine and could only be discovered by soil and water sampling, Stanton's failure to discover the progressive loss until that date was reasonable. Under the rule announced in *Prudential-LMI*, then, the loss manifested in August 1988, the point at which the damage was, or should reasonably have been, known to the insured. As it is undisputed that the United National, St. Paul, and Integrity policies expired prior to that date, none of these carriers is responsible to indemnify Stanton for its loss.[5]

Our colleagues in the Second District recently reached the same conclusion under facts similar to these. In *Hoffman* v. *State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184 [19 Cal.Rptr.2d 809], the plaintiffs alleged they first learned of continuous property damage to their former home more than a year after they had sold it and their insurance policy had lapsed. (*Id.* at pp. 187-188.) They further alleged there was no physical damage to the property while they owned it, that they were unaware of damage, and that they could not have reasonably become aware during their ownership. (*Id.* at p. 191.) On appeal after a general demurrer was sustained without leave to amend, the court concluded that, in legal terms, the plaintiffs' allegations

---

[5]Citing *Prudential-LMI*, Stanton argues it was premature and unjust for the trial court to determine the date of manifestation on demurrer, while litigation still pending against Pacific and Home could conceivably result in a conflicting finding. We disagree. Nothing in *Prudential-LMI* precludes dismissal of a defendant insurer found to be not liable as a matter of law merely because the plaintiff has sued multiple insurers. In any event, the contention has since been mooted by the dismissal of the action as against Home and Pacific.

amounted to a claim that the property damage became manifest after the defendant's policy had lapsed. (*Id.* at pp. 187, 191.) As to the plaintiffs' allegations that they were not, and could not reasonably have been, aware of the damage while the policy was in effect, the court noted: "It would be difficult to allege the absence of manifestation with greater clarity." (*Ibid.*) While the wording of Stanton's allegation of reasonable delayed discovery is not identical, the legal effect is the same.[6]

In an endeavor to avoid this result, Stanton asserts it "has never alleged that the *date of manifestation* of the loss took place at a date later than the date of the respondents' coverage." (Italics added.) Instead, it contends, it merely alleged that it first learned in August of 1988 that samples taken in August of 1987 showed soil contamination. The assertion is incorrect. Stanton has steadfastly maintained that it first learned of the contamination in 1988 and that its discovery of the loss at that date was reasonable. These allegations, read fairly in their context, lead to the inescapable conclusion that Stanton's loss did not become manifest until August of 1988.

As we understand it, Stanton also contends that the court in this case erred in sustaining the demurrers because in *Prudential-LMI*, instead of affirming the grant of summary judgment, the court remanded to permit the plaintiffs to amend their complaint to allege their delayed discovery was reasonable. Stanton is mistaken. In *Prudential-LMI*, the Supreme Court expressly declined to rule on the date of manifestation because the record, while suggesting the loss became manifest after Prudential-LMI's policy had expired, was not conclusive on that point. (51 Cal.3d at p. 700.) In this matter, in contrast, the record *is* clear. Stanton has consistently and repeatedly alleged that it did not and could not reasonably have discovered the loss before August 1988. Thus, its pleadings alone negate any possibility that the loss became manifest any earlier than August of 1988.

Stanton's further assertion that only a trier of fact may determine the date of manifestation also misconstrues *Prudential-LMI*. There, the Supreme Court observed that ". . . the date of manifestation and hence the date of inception of the loss will, in many cases, be an issue of fact for the jury to decide. *When, however, the evidence supports only one conclusion, summary*

---

[6]Stanton attempts to distinguish the *Hoffman* case on the basis that, in contrast to this case, Hoffman alleged there was no physical damage to the property during the policy period. Under *Prudential-LMI*, however, the critical inquiry is not when the damage occurs, but rather, the point at which the insured discovers or reasonably should have discovered it. If an insurer was not on the loss at that point, it is not liable on the policy, whether or not the loss was in progress during its policy period. (*Prudential-LMI, supra,* 51 Cal.3d at pp. 678-679, 693-700.)

*judgment may be appropriate.*" (51 Cal.3d at p. 699, italics added.) Similarly, when plaintiff's own pleadings establish that the loss became manifest after defendants' policies had expired, the complaint fails to raise any issue of fact as to the date of manifestation for a jury to determine.[7] (See *Hoffman* v. *State Farm Fire & Casualty Co.*, *supra*, 16 Cal.App.4th 184.) There being no dispute whether Stanton did or reasonably should have discovered the loss before the actual discovery date, dismissal of the claims was appropriate as a matter of law.

## C. *Stanton's Time Within Which to Sue Was Not Equitably Tolled*

 Even assuming Stanton could allege and prove that its loss became manifest during the policy periods of the demurring insurers, the trial court correctly found the action time barred by Stanton's failure to file suit within one year after its policies expired.

As stated in *Prudential-LMI*, an insured's suit on a policy is timely if filed within one year after the inception, or manifestation, of the loss. (51 Cal.3d at pp. 686-687, 699.) Here, the demurring defendants' policies had all expired by July 1, 1986. Accordingly, coverage could have been triggered only if the progressive loss had become manifest by that date, and the last conceivable date on which Stanton could have filed suit was one year later, July 1, 1987.[8] As Stanton did not file suit until November of 1989, its action is late.

Citing *Prudential-LMI*, Stanton argues it escapes the time bar because the limitations period was equitably tolled while it complied with conditions precedent to litigation and the insurers investigated the claim. *Prudential-LMI*, however, holds that the limitations period is tolled only "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." (51 Cal.3d at pp. 693,

---

[7]Stanton has had several opportunities to allege facts sufficient to constitute a claim and each time has alleged that it discovered the loss in August 1988; its final pleading alleged that its discovery at that time was reasonable. Even now, Stanton does not suggest any set of facts it could allege to support a finding of manifestation during the policy periods. Under these circumstances, we agree that Stanton is bound by its allegations. (See *Hendy* v. *Losse*, *supra*, 54 Cal.3d at pp. 742-743 [burden on plaintiff to demonstrate proposed amendment; where complaint contains allegations destructive of a cause of action, defect cannot be cured by omitting those allegations without explanation from subsequent complaint]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187] [demurrer admits all properly pleaded material facts].)

[8]Of course, if Stanton's loss became manifest *after* the policies in question expired, as it alleged, the insurers' duty to indemnify never arose and the action was properly dismissed as to them on that ground. (See *Gantman* v. *United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1565-1566, fn. 2 [284 Cal.Rptr. 188].)

700.) " 'In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit.' [Citation.]" (*Id.* at p. 693, brackets omitted.)

Here, it is undisputed that Stanton did not notify the defendant insurers of its loss until February and March of 1989, considerably more than one year after the last date on which manifestation would have triggered coverage under defendants' policies. As the limitation period had thus expired well before Stanton gave notice of the loss, the equitable tolling doctrine did not, and could not, apply to give it additional time.

We conclude the demurrers were properly sustained.

### III. *Pacific's Motion for Summary Adjudication Was Properly Granted*

#### A. *Legal Standards*

■ "A motion for summary judgment addresses the question whether there are dispositive material facts which are not in dispute. [Citation.] . . . '[¶] What matters are in issue (and consequently material) is determined mainly by the pleadings, the rules in pleading and the substantive law relating to the particular kind of case.' [Citation.] A party moving for summary judgment can rely upon admissions in an adversary's pleadings to establish facts in support of the motion. [Citation.]." (*Gantman* v. *United Pacific Ins. Co., supra,* 232 Cal.App.3d at p. 1569.)

In reviewing the trial court's grant of summary judgment, we independently determine whether the evidence submitted by the parties raises a triable issue of material fact. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1224-1225 [261 Cal.Rptr. 185]; *Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) We construe the moving party's papers strictly and those of the opposing party liberally. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708].)

## B. *Manifestation*

The trial court properly applied *Prudential-LMI* in granting Pacific's motion for summary adjudication on the ground that Stanton's losses manifested after Pacific's policy had expired. It is undisputed that the Pacific policy was canceled for nonpayment effective March 6, 1988, five months before the date Stanton alleges it first discovered the contamination. "[W]hen the undisputed evidence establishes that no damage had been discovered before a given date (i.e., no manifestation occurred), then insurers whose policies expired prior to that date could not be liable for the loss and would be entitled to summary judgment." (*Prudential-LMI, supra,* 51 Cal.3d at p. 699.)

Most of Stanton's arguments on appeal from the judgment in favor of Pacific repeat those made in its previous appeal, and we need not revisit them now. In appealing the grant of summary adjudication, however, Stanton also argues that it raised a material factual issue sufficient to preclude summary adjudication by alleging that a third party discovered the damage in August of 1987. Stanton's assertion that the damage existed, and was known by *someone* other than itself, does not save it. The *Prudential-LMI* test specifically speaks of damage "known *to the insured,* such that a reasonable insured would be aware that his notification duty under the policy had been triggered." (*Prudential-LMI, supra,* 51 Cal.3d at p. 678, italics added.) An insured could hardly be expected to be aware of a notification duty regarding unknown damage. According to the complaint, the prospective purchaser here acted independently and did not inform Stanton of its discovery; in short, Stanton's allegations carefully avoid any implication that Stanton should reasonably have learned of the contaminated samples any sooner than August 1988, after Pacific's policy had lapsed.

Nor are we persuaded by Stanton's argument that it has been unfairly "whipsawed" by the various insurers' allegedly conflicting positions as to the date of manifestation. Each insurer has consistently maintained that manifestation occurred, as a matter of law, in August of 1988. Stanton's assertion that "United, St. Paul and CIGA argued to the trial court that only the later insurer, Pacific, was responsible for the loss" misreads the record. While United National observed that Stanton could conceivably amend to assert an action against *the carrier on the risk in August of 1988,* in no way did it suggest that Pacific was that carrier. Summary adjudication was properly granted.

## DISPOSITION

The judgments are affirmed. Costs to respondents.

Merrill, Acting P. J., and Simons, J.,* concurred.

---

*Judge of the Contra Costa Municipal Court sitting under assignment by the Chairperson of the Judicial Council.