David L. MEREDITH, John Guddendorf, Ivar Kizans, Leon E. Stratman, Jerry Anderson, Philbert Parr, Robert Macy, Roger McCrimmon, Frank Guddendorf, Edgar Middleton, Claude E. Walton, Joe Stratman, Howard D. Mason, James A. Orr, Tom Kipper, Donald E. Vanheerde, Ivan Wiley, Eugene Dumas, Bill McCurley, Caraline Johnston, Walt Tooley, Nick Dereski, and Olaf Gjerde, Plaintiffs,

v.

ALLSTEEL, INC. and Dan T. Cosgrove, in his capacity as Plan Administrator, Defendants.

No. 92 C 1856.

United States District Court, N.D. Illinois, E.D.

Nov. 2, 1992.

Leon M. Despres, Thomas Howard Geoghegan, Robert Chuck Drizin (argued), Despres Schwartz & Geoghegan, Chicago, IL, for plaintiffs.

Arthur B. Smith, Jr., Michael T. Roumell (argued), Walter W. Miller, Murphy, Smith & Polk, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, David Meredith, *et al.,* ("plaintiffs"), bring this suit against Allsteel, Inc. ("Allsteel") and Dan T. Cosgrove ("Cosgrove") (collectively "defendants") alleging violations of various sections of the Employee Retirement Income Security Act ("ERISA") and § 301 of the Labor Management Relations Act ("LMRA"). Both the plaintiffs and defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 12 of the Local Rules for the Northern District of Illinois. Additionally, defendants have moved to strike plaintiffs' reply to defendants' statement of undisputed material facts. For the reasons outlined below, we deny plaintiffs' motion for summary judgment, and grant defendants' motion for summary judgment in its entirety.

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. Factual Background

Allsteel is an Illinois corporation which manufactures office furniture. Plaintiffs are members of Local 1239 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers ("Union"). Allsteel has engaged in collective bargaining with the Union since the 1940's and has negotiated numerous labor agreements. The current agreement ("Agreement") took effect on April 1, 1991 and runs through April 8, 1994.

In addition to the labor agreements, Allsteel has had a pension plan applicable to Union members since January 1, 1971. The current plan ("Plan") took effect on August 1, 1974 and has been periodically revised. The Plan is subject to and governed by ERISA.

The Plan outlines how to calculate an employee's Retirement Date. Under the Plan, an employee's Retirement Date is the first day of the month coinciding with or next following the date on which he retires.[1] On September 21, 1977, Allsteel issued a summary plan description ("SPD") which described the Plan to employees and stated that an employee's "normal retirement date is the first day of the month after [s/he has] attained age 65 and completed 10 years Service." 1977 SPD at pp. 1–2.

The Plan also outlines what benefits an employee will receive upon retirement. In 1988, Allsteel and the Union negotiated an increase in the amount of pension supplements to be given eligible retired employees. Supplement A, which codified this agreement, provides for $600 and $900 pension supplements as follows:

(a) Any Member who retires on or after January 1, 1985, but before April 1, 1991 shall be entitled to a supplemental benefit for the month in which he retires and each month thereafter while he is living during the payment period in the amount of $600 until such Member attains age 65.

(b) Any Member who retires on or after April 1, 1988 shall be entitled to a supplemental benefit commencing on July 1, 1988 or at later retirement and for each month thereafter while he is

---

1. For example, if an employee retires on February 1, 1990, his Retirement Date would be February 1, 1990. However, if an employee retires on February 12, 1990, his retirement date would be March 1, 1990.

living during the payment period in the amount of $900 until such Member attains age 65.

Supp. A at p. 2.

In 1991 Allsteel negotiated the current Agreement with the Union. Exhibit F to that Agreement was designed to extend the supplemental benefits articulated in Supplement A. While the benefits outlined in Supplement A were to end on March 31, 1991, Exhibit F ensures that eligible retirees receive supplemental benefits until they turn 65, regardless of whether that event takes place before March 31, 1991.[2]

At times ranging from 1986 to March, 1991, plaintiffs David L. Meredith, Frank Guddendorf, John Guddendorf, Claude Walton, Jerry Anderson, and Roger McCrimmon informed Allsteel that they intended to retire and asked for estimates of their pension benefits. In estimating each employee's benefits, Allsteel calculated the retirement dates to be the first day of the month following the last day worked. Allsteel informed those employees who expressed an interest in retiring in March, 1991, that they were not eligible for the $600 and $900 supplemental benefits. As a result, plaintiffs did not stop working during March, 1991.

### III. Discussion

#### A. Motions to Strike

■ Allsteel has moved to strike both plaintiffs' statement of undisputed facts and plaintiffs' response to defendants' statement of undisputed facts. Allsteel claims that the plaintiffs' statements are unsupported by affidavits, depositions, or other record evidence as required by Federal Rule of Civil Procedure 56(e) and Rule 12 of the Local Rules for the Northern District of Illinois.

Federal Rule of Civil Procedure 12(f), permits a party to move to strike matters at the pleading stage, not at the summary judgment stage. Significantly, local Rule 12 provides that failure to comply with Federal Rule of Civil Procedure 56(e) is grounds for denying

a motion for summary judgment, not for striking it. Accordingly, defendants' motion to strike is inappropriate.

#### B. Cosgrove's Fiduciary Duties [3]

■ Plaintiffs have sued Cosgrove claiming that as a Plan Administrator, he breached his fiduciary duties under ERISA by "refusing to provide Plaintiffs with critical information and by acting unreasonably to delay resolution of this matter." Complaint at ¶ 25. ERISA defines an "Administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated ..." 29 U.S.C. § 1002(16)(A). Here, the Plan clearly designates Allsteel, not Cosgrove, as the Plan Administrator. See Plan, § 1.3.

■ The term "fiduciary" is also expressly defined by ERISA, and means one who exercises any discretionary authority or discretionary control over the management or administration of a plan or over the disposition of its assets. See 29 U.S.C. § 1002(21)(A)(i). A Department of Labor Interpretive Bulletin explains that an individual who processes and responds to benefit claims under a pension plan, communicates with claimants, and makes recommendations for decisions with respect to plan administration, is not a fiduciary. See Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8, § 2509.75-9(D-2). Moreover, where a corporation is a fiduciary under a pension plan, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of ERISA § 3(21)(A)(iii), unless there is some evidence that the officers are involved in more than merely administering the plan in accordance with its terms. Confer v. Custom Engineering Co., 952 F.2d 34, 37 (3d Cir. 1991). Plaintiffs contend that because the Union always dealt with a person in Cosgrove's position during labor negotiations, Cosgrove has in fact exercised individual discretion beyond the scope of the Plan. However, the Seventh Circuit recently held that

---

2. Exhibit F states as follows:
 1. Employees who retired on or after 1/1/85 and prior to 3/31/91 shall be entitled to continue to receive a $600 per month pension supplement until they reach age 65.
 2. Employees who retired on or after 4/3/88 and prior to 3/31/91 shall be entitled to continue to receive a $900 per month pension supplement until they reach age 65.

3. Because the parties' heated briefing of Allsteel's fiduciary duties does not affect the issues before this Court, we will not address the subject separately. Nor will we address the so-called "Latus Letter." While the Court is disturbed by the controversy surrounding the letter, it does not affect the issues before us.

negotiations which affect the terms and conditions of future pension benefits do not implicate fiduciary duties, since such activity is distinct from administering and managing a pension plan. *See Ladish Co. v. International Assoc. of Machinists and Aerospace Workers,* 966 F.2d 250, 254 (7th Cir.1992). Accordingly, any participation by Cosgrove in negotiations concerning future pension terms would not constitute an exercise of discretion sufficient to render him a fiduciary.

### C. Wrongful Refusal to Pay Benefits

Count II is the heart of plaintiffs' Complaint. Here, plaintiffs allege that Allsteel "wrongly applied the defined term 'Retirement Date,' a deeming provision in the Plan, so that plaintiffs who did in fact retire in March 1991 would be treated as if they had retired April 1, 1991, and not [sic] entitled to the supplemental benefits." Complaint at ¶ 37.

#### (i) Standard of Review of Exhibit F and the Pension Plan

 Under *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), unless an ERISA plan empowers plan administrators to construe or interpret the plan, the denial of benefits is to be reviewed *de novo.*

Here, § 11.8 of the Plan states:

The Board of Directors shall serve as an appeal board for Employee complaints regarding eligibility for benefits under the Plan, determination of benefit levels under the Plan, and related matters under the Plan.

Allsteel contends that this section gives the Board discretionary authority to construe relevant terms and provisions under the Plan, and, accordingly, that this Court should

review Allsteel's interpretation of the Plan for an abuse of discretion. We disagree.

In *Ziaee v. Vest,* 916 F.2d 1204 (7th Cir. 1990), the Seventh Circuit assessed similar language [4] and held that because the grant of review authority to a company's trustees did not directly mention construction of the plan, it did not create a " 'power to construe disputed or doubtful terms.' " *Id.* at 1207. Similarly, § 11.8 does not mention construction of the Plan. Accordingly, we may reach our own decision regarding the Plan's meaning.

#### (ii) The Meaning of "Retire"

██ At bottom, the dispute before this Court revolves around the meaning of the term "retire" as it is used in Exhibit F to the 1991 Labor Agreement. The plaintiffs argue that Exhibit F allows Allsteel employees to stop working any time before April 1, 1991 and become entitled to the $600 and $900 supplemental pension benefits. Allsteel, on the other hand, claims that in order to be eligible for these benefits, an employee must have stopped working on or before March 1, 1991. We conclude that there is a genuine dispute regarding the meaning of the term "retire" as it is used in Exhibit F.

In interpreting Exhibit F, we first look to its plain language. If the language has an unambiguous meaning, then our review stops there. *Dribeck Importers v. G. Heileman Brewing Co.,* 883 F.2d 569 (7th Cir.1989). In determining ambiguity, it would be inappropriate to ignore the real-world context in which Exhibit F's language was negotiated, drafted, and would be applied. Accordingly, we will determine the ambiguity of Exhibit F in conjunction with the relevant language in the Plan.[5] Read in light of the Plan, we find that the meaning of the term "retire," as it was used in Exhibit F, is ambiguous.

---

4. In *Ziaee,* the Plan provision stated that "[i]f after review [of a denial of benefits] to [plan's] Administrator concludes that the denial of benefits was erroneous or contrary to this Plan or the law, the Administrator shall take such action as shall be appropriate to provide such benefit." *Id.* at 1206.

5. It is appropriate to consider the Plan's language when assessing Exhibit F because Exhibit

F was clearly designed to extend benefits made available to employees under Supplement A to the Plan. Supplement A, in turn, was to be governed by the Plan. *See* Supplement A at p. 1 (in order to be eligible for the supplemental benefits, an employee must have retired in accordance with subsections 4.1 through 4.5 of the Plan).

On the one hand, the word "retire" has a plain everyday meaning—that is, to stop working. On the other hand, the Plan clearly states that an employee's Retirement Date is the first day of the month following his last day of work. Accordingly, the meaning of the term "retire" in Exhibit F is ambiguous.

However, based on the record, we can resolve this ambiguity. Plaintiffs have offered evidence that the parties intended the term to have its everyday meaning. Alton Franks ("Franks"), Chairman of the Bargaining Committee at Allsteel states in his affidavit that the parties who drafted the Plan "clearly intended that a person could retire on any day of the month," and that "[t]hat person would receive the benefits in effect on that day," while "[t]he payments would not begin until the first day of the next month." Franks Aff. at ¶ 14.

On the other hand, there is substantial record evidence that this is not the way in which retirement benefits have been calculated. Instead, the uncontested evidence demonstrates that the term "retire" has a very particular meaning under the Plan. In his affidavit, Cosgrove claims that Allsteel, as Plan Administrator, has consistently interpreted the Plan to mean that an employee "retires" as of his Retirement Date, both for the purpose of beginning benefit payments, and for calculating the benefits to which the participant was entitled. Furthermore, record evidence suggests that Allsteel followed this practice long before the drafting of either Supplement A or Exhibit F, even when to do so advantaged employees.[6] Cosgrove Aff. at ¶¶ 20-23, Exhs. 9 & 10.

In the face of Allsteel's longstanding practice of calculating an employee's benefits based on his Retirement Date rather than his last day worked, we find that Frank's assertion of a contrary intent does not create a genuine issue of material fact regarding the meaning of "retire" in Exhibit F. According-

ly, summary judgment is appropriate for Count II.

### D. The Reduction of Accrued Benefits

In Count I of their complaint, plaintiffs allege that Allsteel violated ERISA § 204(g) by adopting the 1991 Agreement. Section 204(g) of ERISA provides that an amendment to a plan may not decrease a participant's accrued benefits, including early retirement benefits attributable to service before the amendment. 29 U.S.C. § 1054(g). Plaintiffs argue that by adopting the Agreement and interpreting Exhibit F to deny the $600 and $900 supplemental benefits to those employees who stopped working after March 1, but before April 1, 1991, Allsteel reduced the supplemental benefits which had been available to employees under an earlier labor agreement. This reasoning, however, fails.

Supplement A, which embodies a prior labor agreement guaranteeing the supplemental benefits at issue, used virtually identical language to that in Exhibit F in setting out who is eligible to receive those benefits. Because Exhibit F and Supplement A are consistent, rather than contradictory, Exhibit F could not serve to reduce any benefits that employees were accruing under Supplement A. Accordingly, the adoption of the Agreement did not cause a reduction in any accrued benefits.

More importantly, the Agreement did not violate § 204(g) of ERISA because the benefits at issue here are not "accrued benefits" within that section's meaning. The legislative history of ERISA indicates that accrued benefits do not include the value of the right to receive early retirement benefits which are not continued after an employee's normal retirement age. *See* 1974 U.S.Code & Admin.News, 4639, 4890, 4935.[7] Here, the benefits at stake are early retirement benefits which end when a retiree reaches his normal retirement age. Accordingly, the adoption of

---

6. Harold McGowan, for example, stopped working on April 2, 1982. However, his retirement date was listed as May 1, 1982, thus qualifying him for higher benefits which began on May 1, 1982. Cosgrove Dep., Exh. 9.

7. *See also Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574 (3d Cir.1985); *Sutton v. Weirton Steel Division of National Steel Corporation,* 724 F.2d 406 (4th Cir.1983); *Hernandez v. So. Nevada Culinary and Bartenders Pension Trust,* 662 F.2d 617 (9th Cir.1981).

the Agreement does not violate § 204(g) of ERISA.

### E. Creation and Availability of SPD's

Plaintiffs claim that Allsteel violated § 104(b) of ERISA by failing to furnish an SPD apprising plaintiffs of changes to the Plan, as required under the statute. Specifically, plaintiffs contend that "[a]n SPD would have notified all plaintiffs of All–Steel's contorted interpretation of the Plan." Plaintiff's Memorandum in Support of Their Motion for Summary Judgment at p. 11. This claim, however, must fail.

The record evidence indicates that Allsteel issued at least one SPD for the Plan. *See* Cosgrove Affidavit, Exh. 4.[8] In that SPD, Allsteel describes what constitutes an employee's Normal Retirement Date. Importantly, however, the changes to the Plan at issue here—Supplement A and Exhibit F—do not purport to change the definition of the term "retire" or "Retirement Date." Any updated SPD, then, would not have discussed or further explained the meaning of the terms which have caused plaintiffs' alleged injury. Accordingly, it is irrelevant, here, whether or not Allsteel complied with § 104(b) of ERISA.

What remains is plaintiffs' claim that Allsteel violated § 502 of ERISA by failing to comply with a request for information. Under § 502, any administrator who fails to comply within 30 days with a request for information to which the employee is entitled may, in the court's discretion, be liable to such participant. 29 U.S.C. § 1132(c). In May, 1991, plaintiff Meredith submitted a written request for an SPD. He did not receive an answer within 30 days, and on October 8, 1991 he again submitted a written request for an SPD. On November 1, 1991 Allsteel sent Meredith the requested information.

While Allsteel's behavior clearly violated § 502, it does not necessarily warrant discretionary sanction unless there was bad faith or prejudice to the plaintiffs. *See, e.g., Lesman v. Ransburg Corporation,* 719 F.Supp. 619, 622 (W.D.Mich.1989) ("courts may properly consider detrimental reliance or prejudice before imposing penalties under 29 U.S.C. § 1132(c)."). *See also Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739 (7th Cir.1991) (In case where company technically violated 29 U.S.C. § 1022(a)(1), no recovery warranted unless company acted in bad faith or otherwise prejudiced their employees.) Cosgrove, in his sworn affidavit, explains that Meredith's initial request was inadvertently placed in his personnel file and was not discovered until April, 1992 when the company began reviewing documents for this lawsuit. Plaintiffs, for their part, do not contest this explanation.[9] Accordingly, there is no issue of fact as to whether Allsteel acted in bad faith. Summary judgment, therefore, is appropriate on this claim.

### F. Violation of the Labor–Management Relations Act

In Count IV of their complaint, plaintiffs claim that Allsteel breached the Agreement between the company and the Union. Plaintiffs go on to state that by breaching the Agreement, Allsteel violated § 301 of the Labor–Management Relations Act. Because § 301 confers jurisdiction over suits between labor and management for violations of agreements between the two groups, it is unclear how any breach of the Agreement could "violate" § 301. *See* 29 U.S.C. § 185. Accordingly, we read Count IV to be an alternative means for challenging Allsteel's interpretation of the language in Exhibit F.

Since Allsteel's breach of the Agreement raises the same issues as those raised in Count II, summary judgment is equally appropriate for Count IV.

---

8. The most recent SPD states that it reflects all amendments made to the Plan through May 1, 1978. *See* Cosgrove Aff., Exh. 3. Accordingly, it could not have included discussion of Supplement A or Exhibit F.

9. Although not a direct challenge to Allsteel's explanation, the plaintiffs do assert in their Com-

plaint that in April, 1991 several plaintiffs requested an SPD and were told that none existed. Plaintiffs, however, fail to support this allegation with any evidence—not even an affidavit from one of the requesting employees. Accordingly, we do not find this sufficient to create a genuine issue of material fact.

### IV. Conclusion

For the foregoing reasons we deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment in its entirety. It is so ordered.