**Norman BELL, et al., Plaintiffs,**

v.

**EXECUTIVE COMMITTEE OF the UNITED FOOD AND COMMERCIAL WORKERS PENSION PLAN FOR EMPLOYEES, et al., Defendants.**

**No. Civ.A. 01–236(ESH).**

United States District Court, District of Columbia.

Jan. 30, 2002.

Eli Gottesdiener, Gottesdiener Law office, Washington, DC, Daniel Feinberg, pro hac vice, Sigman, Lewis & Feinberg, Oakland, CA, Alan M. Sandals, Sandals & Langer, LLP, Philadelphia, PA, for plaintiffs.

Robert Alexander, Bredhoff & Kaiser, PLLC, Washington, DC, for Executive Committee of United Food and Commercial Workers Inter. Union Pension Plan for Employees, Douglas H. Dority, Joseph T. Hansen, Sarah Palmer Amos, W. Gary Sauter, David T. Barry, defendants.

Thomas Stephen Gigot, Michael Joseph Prame, Groom Law Group Chartered, Washington, DC, for Investment Performance Services, Inc., John Statts, Thomas Shanklin, James Catington, defendants.

John Herbert Beisner, Brian P. Brooks, O'Melveny & Myers, L.L.P., Washington, DC, for Clifton Group Investment Management Co., defendant.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

On October 12, 2001, plaintiffs served a proposed amended complaint in this action, which arises under section 409 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1109. Plaintiffs amended their complaint to add three individual defendants—John Statts, Thomas Shanklin, and James Catington—each of whom was an officer and employee of defendant Investment Performance Services, LLP ("IPS") at all times relevant to the action. IPS and the three individual defendants have moved pursuant to Fed. R.Civ.P. 12(b)(6), 12(f), 15(a), and 56(b) to strike the amended complaint, to dismiss the claims against the individual defendants, or for summary judgment with respect to those counts. In response, plaintiffs have moved pursuant to Fed.R.Civ.P. 15(a) and 56(f) for leave to refile the amended complaint *nunc pro tunc* and for

an order continuing or denying defendants' motion for summary judgment.[1] Upon consideration of the pleadings and the entire record before it, the Court finds that the complaint was properly amended, and that resolution of the claims against the individual defendants is inappropriate at this early stage. The Court will therefore deny defendants' motions to strike and dismiss, and will deny as moot plaintiff's motion for leave to refile the amended complaint.

## BACKGROUND

The UFCW Pension Plan for Employees (the "Plan") serves officers and staff of the UFCW, and has more than 6,000 participants and beneficiaries. (First Amended Complaint ¶ 43.)[2] This action arises out of the decision of the UFCW Pension Plan Executive Committee to approve an options-based hedge strategy as an investment approach for the Plan in August 1998, which plaintiffs allege led to losses of approximately $37 million. (First Amended Complaint ¶ 40.)

In November 2000, the Trustees filed *Executive Committee of the UFCW Pension Plan for Employees, et al. v. Investment Performance Services, Inc., et al.,* No. 00–2788 (*"Executive Committee"*), under § 502(a)(2) of ERISA, 29 U.S.C. §§ 1132(a)(2). The complaint in *Executive Committee* is premised on the belief that the hedge program was conceptually a prudent investment strategy for the Plan, but that Clifton Group Investment Management Company ("Clifton") and IPS, the Plan's investment consultant, breached their fiduciary duty to the Plan in the implementation of the hedge program.[3] The *Executive Committee* plaintiffs seek recovery for the Plan under 29 U.S.C. § 1132(a)(2).

In response, IPS and Clifton filed cross-claims against the Trustees under the theory that if the hedge program were imprudent, the Trustees themselves are liable to the Plan for the losses under § 409 of ERISA, which holds Trustees personally liable for any breach of fiduciary duty.[4] 29 U.S.C. § 1109.

The class action complaint in the instant action was filed in January 2001. The *Bell* plaintiffs are participants in the Plan, and they argue that the Trustees, in addition to IPS and Clifton, breached their fiduciary duties to the Plan by following the advice of IPS and permitting Clifton to implement the hedge program. As specified by ERISA, the *Bell* plaintiffs seek the same relief as the *Executive Committee* plaintiffs—restitution to the Plan for losses caused by the alleged breach of fiduciary duty. 29 U.S.C. §§ 1109, 1132(a)(2). As with the counterclaims asserted by IPS and Clifton in *Executive Committee*, any trustee found to have breached his or her fiduciary duty to the Plan in the *Bell* lawsuit is personally liable for damages.[5]

On August 9, 2001, the Court issued a scheduling order to which the parties had consented in relevant part. That order required that "[t]he date by which any other parties shall be joined or the plead-

---

1. Defendant Executive Committee of the United Food and Commercial Workers International Union ("UFCW") has taken no position on the pending motions, but filed a brief to clarify that any factual assertions made in connection with IPS' motion have no connection with any future proceedings in this action.

2. The Plan is subject to regulation under ERISA.

3. Clifton has taken no position on the current motions.

4. IPS and Clifton also filed cross-claims against one another.

5. *Executive Committee* and *Bell* were consolidated on August 9, 2001.

ings amended is October 15, 2001." (Scheduling Order, August 9, 2001, ¶ 2.) Pursuant to that Order, plaintiffs filed their first amended complaint on October 12, 2001, joining Statts, Shanklin, and Catington as defendants. Plaintiffs assert that the three individuals, as officers and employees of IPS, breached their fiduciary duty under ERISA by investigating, recommending, implementing, and continuing the hedge program. (First Amended Complaint ¶¶ 17–19, 50.) IPS and the individual defendants have moved to strike the amended complaint because plaintiffs failed to obtain leave to file. Alternatively, they have moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), arguing that plaintiffs have not alleged that Statts, Shanklin, and Catington functioned as fiduciaries under ERISA. Finally, defendants have moved for summary judgment on essentially the same ground.[6]

## LEGAL ANALYSIS

### I. Motion To Strike

■ Defendants first argue that the amended complaint should be stricken because plaintiffs failed to obtain leave of court before filing it. Rule 15(a) of the Federal Rules of Civil Procedure provides that where, as here, responsive pleadings have been filed, a party may amend a pleading "only by leave of court . . . and leave shall be freely given when justice so requires." A complaint is a pleading. Fed.R.Civ.P. 7(a); *Adkins v. Safeway, Inc.*, 985 F.2d 1101, 1102 (D.C.Cir.1993). The August 12, 2001 Scheduling Order is-

sued by the Court authorized the parties to amend all pleadings by October 15, 2001.[7] The first amended complaint was filed and served on October 12, 2001. This Circuit has held that under the liberal standard of Rule 15(a), "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (internal quotation omitted); *see Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083–84 (D.C.Cir.1998) (emphasizing Rule 15(a)'s liberal standard). Defendants have offered no real basis to conclude that the amended complaint was served for the purpose of undue delay, in bad faith, because of a dilatory motive, or as a result of a repeated failure to cure previous defects. And, as explained below, plaintiffs' amendments are not futile. Accordingly, plaintiffs' amended complaint is proper under Rule 15(a) and the August 12 Order.

### II. Motion To Dismiss

■ Defendants next argue that the complaint with respect to Statts, Shanklin, and Catlington should be dismissed for failure to state a claim. Defendants contend that plaintiffs have failed to plead that the individual defendants acted as fiduciaries under ERISA.

■ Section 3(21)(A) of ERISA provides that

---

6. Defendants have also moved for fees and costs relating to this motion.

7. Even though they drafted it, the parties understandably dispute the meaning of the phrase "[t]he date by which . . . the pleadings [shall be] amended is October 15, 2001" in the August 12 Order. Defendants contend that the Order merely established a timeframe within which the parties could move for leave

of court to amend their pleadings. Plaintiffs counter that in the August 12 Order, the Court granted leave to amend until October 15, 2001. Given the arguably ambiguous language of the Order, the Court will not penalize plaintiffs for their interpretation by requiring them to file a formal motion. In any event, the liberal requirements of Rule 15(a) render the dispute over the Scheduling Order meaningless as a practical matter.

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Supreme Court has held that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties—and to damages...." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Department of Labor has promulgated regulations under ERISA that elaborate on this statutory definition of a fiduciary. Those regulations explain that fiduciaries include investment advisors who regularly render advice as to the value of securities or other property, or make recommendations as to the advisability of buying or selling securities or other property, under an agreement with the plan that the advice will serve as the primary basis for investment decisions by the plan. 29 C.F.R. § 2510.3–21(c). Courts have found that investment advisors are fiduciaries under these regulations. *E.g., Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994).

Corporate entities can also be fiduciaries under ERISA. *E.g., Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254 (D.C.Cir.1994). There is widespread disagreement among courts, however, about the circumstances under which the officers or employees of a corporate fiduciary might also acquire fiduciary status under ERISA. Defendants argue that federal courts have rejected the idea that a corporate fiduciary's officers and employees automatically become fiduciaries under ERISA. *See, e.g., Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir.1991) ("We thus hold that when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of the corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration.") (emphasis in original); *Torre v. Federated Mutual Insurance Co.*, 1993 WL 545237, at *3 (D.Kan. Dec.3, 1993) (same). Defendants contend that because ERISA was enacted against a backdrop of "universal and time-honored concept[s]" of corporate law, *International Brotherhood of Painters v. George A. Kracher, Inc.*, 856 F.2d 1546, 1550 (D.C.Cir.1988), the statute incorporates the traditional rule that a corporate officer or employee cannot be held personally liable.[8]

---

**8.** Case law on the definition of fiduciary under ERISA, however, does not go so far. Even the cases cited by defendants, which consist of *Confer* and its progeny, hold that while "corporate agents do not become fiduciaries merely by reason of their positions, [they do acquire that status if it is] shown that they have individual discretionary roles as to plan administration." *Eyler v. Commissioner*, 1995 WL 127907, at *11 (U.S.Tax Ct.1995); *see In re Fruehauf Trailer Corp.*, 250 B.R. 168, 204–05 (D.Del.2000) (same); *Atwood v. Burlington Industries Equity, Inc.*, 1994 WL 698314, at *7 (M.D.N.C. Aug.3, 1994) (same); *Meredith v. Allsteel, Inc.*, 814 F.Supp. 657, 660 (N.D.Ill.1992) (same); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1451–52 (M.D.Ala.1992) (same); *Muller v. M.D. Sass Assocs.*, —— F.Supp.3d ——, ——, 1992 WL 80938, at *7 (D.N.J. Apr.22, 1992) (same).

In response, plaintiffs cite a number cases for the proposition that corporate officers and employees who are acting in the course of their employment may be fiduciaries under ERISA, depending on the amount of authority or control that they exercise over the plan and its assets. *See, e.g., Eaton v. D'Amato,* 581 F.Supp. 743, 747 (D.D.C.1980) (noting that a corporation "and its key officials exercised far more than ministerial powers. Their status as administrator may well qualify them automatically as fiduciaries in this instance"); *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1461 (9th Cir.1995) ("[W]e reject the Third Circuit's interpretation in *Confer* that an officer who acts on behalf of a named fiduciary corporation cannot be a fiduciary if he acts within his official capacity and if no fiduciary duties are delegated to him individually.").[9]

■ This Circuit has not addressed under what circumstances—if any—an individual who is an employee or officer of a corporate fiduciary may also be designated a fiduciary under ERISA. While the courts that have considered this issue have answered the question in a variety of ways, in all of the rulings, in accordance with 29 U.S.C. § 1002(21)(A) and *Mertens,* the

facts of the case affect whether an individual is found to be a fiduciary under the statute. Under the cases cited by the parties, there is no per se rule against holding an individual employed by the corporate fiduciary as an ERISA fiduciary, but rather it is a factual determination involving an assessment of the extent of responsibility and control exercised by the individual with respect to the Plan.

Under Rule 12(b)(6), dismissal is appropriate only where a defendant has "show[n] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Swine Flu Immunization Products Liability Litigation,* 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1955)). The amended complaint alleges that Statts, Shanklin, and Catington were officers and employees of IPS, which was a fiduciary of the Plan under ERISA. (First Amended Complaint ¶¶ 17–19, 23.) Plaintiffs assert that the three individual defendants "were the IPS officers and employees primarily responsible for providing investment consultant advice to the Plan" (*Id.* ¶ 20), and then allege that they had a key role in advising the adoption of the hedge program.[10] (*Id.* ¶¶ 25–41.) More-

9. Defendants' attempt to distinguish *Eaton* and *Kayes* based on the specific provisions of the statute cited in those cases—29 U.S.C. § 1002(21)(A)(i), (iii)—is, at this point, unavailing. In the first instance, plaintiffs have not explicitly restricted their claims to 29 U.S.C. § 1002(21)(A)(ii), as defendants suggest. Even assuming that the complaint were limited in that respect, defendants' argument that Statts, Shanklin, and Catington cannot be fiduciaries under ERISA and the Department of Labor regulations because it is IPS—and not the individuals—that is a party to the Consulting Agreement with the Plan's named fiduciary is not persuasive. This argument, for which defendants provide no legal support, is based on an extremely narrow reading of the phrase "mutual agreement, arrangement or understanding" in the regulations that appears to contradict the functional na-

ture of the fiduciary standard and the wording of the regulations themselves.

10. In this sense, the case is distinct from *Custer v. Sweeney,* 89 F.3d 1156 (4th Cir. 1996). There, the Fourth Circuit upheld the lower court's dismissal of plaintiff's ERISA claim against his attorney for breach of fiduciary duty because the complaint "lack[ed] any specific allegations capable of demonstrating that Sweeney transcended his role as legal counsel." *Id.* at 1163. Unlike the "nonbinding recommendations" and "ministerial functions for the pension plan" alleged in the complaint in *Custer, id.,* plaintiffs here have made specific allegations that IPS and the individual defendants "render[ed] investment advice for a fee," 29 U.S.C. § 1002(21)(A), thus satisfying the statutory requirement.

over, plaintiffs' documentary evidence does show that Statts, Shanklin, and Catington may have exercised some individual control over the Plan. (*See, e.g.,* Pl.Ex. 1, at 3 (memo from Catington to Statts regarding the Plan's investment policy); Pl.Ex. 5 (memo from Shanklin to Statts and Catington regarding recommendation and implementation of the hedge program); Pl. Ex. 7 (letter from Statts and Shanklin to the Executive Committee recommending the hiring of Clifton and implementation of the hedge program); Pl.Ex. 16 (memo from Shanklin to Statts recommending termination of the hedge program)). Based on these allegations and supporting evidence, defendants could prevail on their motion to dismiss only if the Court could rule as a matter of law that the officers and employees of a corporate fiduciaries could never qualify as fiduciaries under ERISA. However, "[d]etermining whether someone is a fiduciary is a very fact specific inquiry which is difficult to resolve on a motion to dismiss." *Fruehauf Trailer,* 250 B.R. at 204. Thus, at this stage, the Court cannot make such a ruling, for the amended complaint sufficiently pleads facts that could ultimately entitle plaintiffs to relief against Statts, Shanklin, and Catlington. The Court will therefore deny defendants' motion to dismiss for failure to state a claim.

### III. Motion for Summary Judgment

Alternatively, defendants argue that the Court should enter summary judgment and dismiss with prejudice plaintiffs' claims against Statts, Shanklin, and Catington. Given the procedural posture of the case and extensive factual development that is yet to occur, this motion is premature and will therefore be denied.

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989). As noted above, the Court cannot find, as a matter of law, that the individual defendants were not fiduciaries under ERISA; that issue will turn on the particular facts of the case. Discovery in this action is ongoing—in fact, plaintiffs have not yet deposed Statts, Shanklin, or Catington. As a result, numerous material facts regarding the roles played by the individual defendants have yet to be developed, and it cannot be said that they are undisputed for summary judgment purposes. Defendants' motion for summary judgment is therefore denied.[11]

### CONCLUSION

For the aforementioned reasons, defendants' motions to strike the amended complaint, dismiss the claims against the individual defendants, or for summary judgment against the individual defendants are denied. Plaintiffs' motion for leave to refile the amended complaint is denied as moot.

---

11. Defendants' request for costs is also denied. Moreover, defendants' argument in support of this request—that "[p]laintiffs' decision to sue these gentlemen can only be explained as recklessness or a calculated at-

tempt to intimidate IPS's management on the eve of a Court-ordered settlement conference" (Def.Mem. at 26)—is unsupported and does nothing, as a matter of law or fact, to advance their legal arguments.

A separate order accompanies this opinion.

### ORDER

Upon consideration of defendants' motions to strike the amended complaint or dismiss the claims against the individual defendants, plaintiffs' motion for leave to refile the amended complaint or continue defendants' motion for summary judgment, and the entire record herein, it is hereby

**ORDERED** that IPS's motion to strike the amended complaint [39–1] or dismiss the claims against the individual defendants [39–2] is **DENIED;** and it is

**FURTHER ORDERED** that the motion of defendants Statts, Shanklin, and Catington to strike the amended complaint [73–1] or dismiss the claims against them [73–2] is **DENIED;** and it is

**FURTHER ORDERED** that plaintiffs' motion for leave to refile the amended complaint [53–1] or refuse or continue defendants' motion for summary judgment [53–2] is **DENIED AS MOOT.**

**SO ORDERED.**