[No. A053294. First Dist., Div. One. Jan. 16, 1992.]

CENTRAL NATIONAL INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
CHARLES A. SPINDT et al., Real Parties in Interest.

**COUNSEL**

Thornton, Taylor, Downs & Becker, Jonathan H. Erb and Michael F. Scully for Petitioner.

No appearance for Respondent.

Martin & Leaf and Ron Leaf for Real Parties in Interest.

## OPINION

## DOSSEE, J.—

### SUMMARY

By a petition for writ of mandate, Central National Insurance Company seeks to compel respondent, County of San Mateo Superior Court, to grant its motion for summary judgment.

Central National is the defendant in a suit brought by real parties in interest, Charles and Patricia Spindt, for breach of an insurance contract and various tort theories following Central National's refusal to pay the Spindts' claim for the settling and cracking of the foundation and walls of their house.

We initially denied the petition; however, the Supreme Court returned the matter to us with citation to *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 684-699 [274 Cal.Rptr. 387, 798 P.2d 1230] (Prudential-LMI), and with directions that we issue an alternative writ directing the trial court to show cause why it should not grant the motion for summary judgment on the grounds that "as a matter of law (1) the suit was untimely and/or (2) the loss claimed is not properly allocable to petitioner's policy." We complied.[1]

As will be seen, we hold (1) that there are triable issues of fact concerning whether a reasonable insured, with a specified peril policy like that issued by Central National to the Spindts, "would be aware that his notification duty under the policy has been triggered" (*Prudential-LMI, supra*, 51 Cal.3d 674, 687) and "would be on notice of a potentially insured loss" (*ibid.*), and (2) that a question of fact remains whether the loss in the instant case was continuing and progressive.

### BACKGROUND

According to the first amended complaint, the Spindts were the owners of real property in Menlo Park, a home they had purchased in 1966. From September 20, 1983, until September 20, 1985, they carried an insurance policy through Central National Insurance Company.

Prior to 1975, they noticed sticking doors and uneven floors in their home. In August of 1975, they contracted with house movers to repair the damage.

---

[1]The Supreme Court having limited its order solely to these issues, we need not discuss other issues raised below. Notably, here the Spindts abandon their argument made below that regardless of the applicability of *Prudential-LMI, supra*, certain of their tort causes of action were still viable. As they correctly observe, the trial court never reached those issues, having denied the motion clearly after considering the very questions posed in the Supreme Court's order.

They saw no further damage for a year and a half and believed their problems were solved.

At various times during the two-year coverage period of the Central National policy, however, the Spindts noticed changes in the condition of the house, including cracks, sticking doors and uneven floors. At such times, and indeed prior to March 13, 1989, they allegedly had no actual or constructive knowledge that changes in condition or damage to their home were the result of intrusion of surface water, one of the perils specified in the Central National policy. On March 13, 1989, they received a soil report from UPP Geotechnology, Inc., which concluded that the house was suffering from significant distress caused in part by the introduction of surface waters into underlying expansive clay foundation soil.

Although on or about July 15, 1988, the Spindts had given notice of a possible loss to the insurance company, according to the amended complaint they did not at that time realize that part of the damage to their home was caused by intrusion of surface waters, so that they were thereby "excused from filing suit upon said claims until, at the earliest, one year after March 13, 1989."

Once they discovered a possible claim—i.e., in March of 1989—they promptly notified Central National.

Based upon these facts and others not relevant to the issues before us, the Spindts pleaded causes of action for breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of the Insurance Code, negligence and conspiracy, with emotional and mental distress allegations. They sought unspecified damages and punitive damages, in amounts based upon loss of the value and use of the insured property.

## DISCUSSION

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) ▪ The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. [Citation.] Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.] [¶] Summary judgment is a drastic measure that deprives the losing party of a trial

on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) "To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Ibid.*)

The Spindts' policy with Central National contained a suit limitation clause which specified that: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within twelve (12) months next after inception of the loss."

In *Prudential-LMI Com.*, *supra*, 51 Cal.3d 674, our high court had occasion to interpret the phrase "inception of the loss" in the context of "an all-risk homeowners policy which insured against 'ALL RISKS OF DIRECT PHYSICAL LOSS except as hereinafter excluded.' " (*Id.*, at p. 679.) The clause interpreted in that case was the "standard one-year suit provision first adopted by the Legislature in 1909 as part of the 'California Standard Form Fire Insurance Policy' " (*id.*, at p. 680), and was identical to that in the Spindts' policy with Central National.

The high court adopted a delayed discovery rule, and held that the phrase "inception of the loss" was to be "defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. To take advantage of the benefits of a delayed discovery rule, however, the insured is required to be diligent in the face of discovered facts. The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify the insurer of the loss promptly and diligently." (*Prudential-LMI, supra*, 51 Cal.3d at p. 687.)

The court went on to stress that "[d]etermining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact. The insured's unreasonableness in delaying notification of the loss until a particular point in time may be raised as a separate affirmative defense by an insurer in response to

a complaint by the insured. . . . The insurer has the burden of proving those allegations by a preponderance of the evidence." (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.)

The facts presented in support of and in opposition to the motion for summary judgment essentially repeated the allegations of the first amended complaint. In addition, Central National presented evidence that around 1973 the Spindts knew they had "more than an average or usual problem," and that in 1975 Mr. Spindt contacted a soils engineer in order to educate himself on soil conditions and learned that he had soil-related problems. Also, the Spindts presented evidence that the Central National policy is a special purpose, specified peril policy which insures only against the perils of: "earthquake, volcanic eruption, lava flow, seismic wave, tidal wave, surface waters, mudslide, landslide, the collapse, breakage or overflow of dams or reservoirs whether or not attributed to earthquake." The policy was purchased to provide concurrent coverage for these limited risks with that obtained under an all-risk homeowner policy from another carrier. Nothing in the policy restricts coverage to losses which are discovered and reported during the policy term or within one year thereafter.

Central National contends that *Prudential-LMI's* definition of "inception of the loss" in the suit limitation clause should be applied as a matter of law to any insurance policy carrying that provision, including that at issue here. Doing so under these facts, Central National argues, mandates summary judgment because *Prudential-LMI's* definition leaves no room for discussion of the type of policy involved—i.e. the *only* consideration is a determination of when appreciable damage occurs. Since the undisputed facts establish that significant, appreciable damage occurred more than one year before July 14, 1989 (the date the Spindts filed suit), Central National insists that the action is barred.

Real parties urge, on the other hand, that there is a very real difference between the all-risk policy at issue in *Prudential-LMI* and a specified peril policy like that in this case, so that they cannot be deemed to have been "on notice of a potentially insured loss" within the meaning of the *Prudential-LMI* definition unless and until they had reason to know not only that appreciable damage had occurred, but *also* that the damage was caused by a peril specified in their policy. (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.) They correctly point out that in litigation, " '. . . the burden is on the insured to prove that an event is a claim within the scope of the basic coverage.' " (*Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298].) Only after "the insured shows that an event falls within the scope of basic coverage under the

policy" (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]), does the burden shift to the insurer to prove the claim is specifically excluded. (*Ibid.*)

█ Real parties urge that application of Central National's interpretation of the *Prudential-LMI* definition of "inception of the loss" to the specified peril policy would require real parties to make a claim, file a sworn proof of loss, submit to an examination under oath, and potentially file a law suit before they had reason to believe that the policy provided coverage for the occurrence.[2] Indeed, one of Central National's affirmative defenses is precisely that the policy provides coverage only if damage proximately caused by a covered peril occurred.

We agree that Central National reads *Prudential-LMI* too narrowly. The phrase "inception of the loss" is defined, again, as "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI, supra,* 51 Cal.3d at 687.) █ "Determining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter . . ." (*Id.,* 51 Cal.3d at p. 687.)

█ We hold that determination of this fact necessarily encompasses consideration of the type of policy in question along with other circumstances.

The Spindts raised a triable issue of material fact concerning the reasonableness of their allegation that it was not until March 13, 1989, that they realized the damage to their home was caused by a covered peril insured under their policy. The trial court correctly denied the motion on this issue.

*Prudential-LMI, supra,* also examined the allocation of indemnity among successive first party insurers when a loss is continuous and progressive, and held that the insurer on the risk when "manifestation of the loss" occurs is the insurer who must pay the claim. The court further concluded that the phrase "manifestation of the loss" must be defined in the same fashion as

---

[2] The Spindts' policy required them to "as soon as practicable report in writing to the Company or its agent every loss which may become a claim under this policy and . . . also file with the company or its agent within ninety (90) days from the date of discovery of loss a detailed sworn proof of loss."

The policy does not define the term "loss"; however, we note that "loss" is defined as "7. *Insurance.* Death, injury destruction, or damage in such a manner as to charge the insurer with a liability *under the terms of the policy* . . . ." (Webster's New Internat. Dict. (2d ed. 1939) p. 1460, italics added.)

"inception of the loss" to be "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI, supra*, 51 Cal.3d at p. 699.)

■ Real parties presented Mr. Spindt's declaration to the effect that the damage to their home was *not* continuing and progressive but was a series of discrete events, some of which occurred during the time Central National was on the risk.[3] Central National argues that passages from Mr. Spindt's deposition contradict this evidence, and contends that the trial court should have ignored his declaration. (See *Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 573-574 [259 Cal.Rptr. 518].) But the deposition testimony, fairly read, does not contain admissions flatly contradicting the declaration. The latter was sufficient to raise a triable issue of material fact. It cannot be said, as a matter of law, that *Prudential-LMI*'s rule for a continuing and progressive loss case is applicable here.

## CONCLUSION

The alternative writ is discharged, and the petition for writ of mandate is denied.

Newsom, Acting P. J., and Stein, J., concurred.

Petitioner's application for review by the Supreme Court was denied April 2, 1992. Kennard, J., was of the opinion that the application should be granted.

---

[3]Of course, as they conceded at oral argument, if they prevail on this issue at trial, the Spindts may only recover such damages under the Central National policy as actually occurred during the years that company was on the risk.