[No. G011256. Fourth Dist., Div. Three. May 29, 1992.]

WILLIAM J. CARTY et al., Plaintiffs and Appellants, v.
AMERICAN STATES INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Paul B. Witmer, Jr., for Plaintiffs and Appellants.

Ramsay, Johnson & Klunder, Janice A. Ramsay, Michael J. Logan and James P. Carter for Defendants and Respondents.

## OPINION

SONENSHINE, J.—William J. Carty and Rosemarie Carty appeal from a judgment entered in favor of Western Casualty and Surety Company, Western Indemnity Company, Inc., American Economy Insurance Company and American States Insurance Company (collectively American States) following a bifurcated court trial of the coverage issue in the Cartys' action. The Cartys contend the court erred in deciding none of their policies, issued by American States, covered their property loss. We affirm.

### Factual and Procedural Background

In June 1974, the Cartys purchased a six-year-old home in the Lemon Heights area of Santa Ana. Their first homeowner's policy was issued by an insurer which is not a party to this appeal. In 1979, the Cartys began insuring their home through American States, and for the next five years, successive policies covered "all risks of physical loss to the property," excluding perils such as loss due to inherent vice or latent defect, settling or cracking of the foundation or floors, or earth movement. In July 1984, a renewal policy revision further excluded losses due to contractor negligence: faulty, inadequate or defective design, workmanship, construction, grading or soil compaction. Editions of the Cartys' policy through July 1989 continued to exclude losses due to contractor negligence.

In the fall of 1988, the Cartys returned from a vacation to find water pipes had broken, causing flooding of the downstairs portion of their home. When the carpeting and carpet pads were removed, the Cartys learned for the first time that the underlying concrete slab and foundation were cracked. American States paid the Cartys' water-damage claim, but, after examining the property and performing soils tests, the insurer denied coverage of further property loss and canceled the policy.

The Cartys brought suit against American States for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing and fraud. The case proceeded to a bifurcated court trial at which the coverage issue was tried first. On undisputed facts established in large part by the testimony of the Cartys' expert engineering geologist, the court found: (1) The Cartys had no notice of the cracked slab or problems with the foundation of the house prior to the flooding of September 1988; (2) the

predominant cause of damage to the slab was inadequate compaction of fill material, inadequate reinforcement of the slab and lack of anchoring of the foundation to bedrock; and (3) the defects in construction were latent defects neither readily observable nor apparent on reasonable inspection. On the basis of these findings, the court held the policy in effect at the time of manifestation of the loss applied, and that the loss, due to latent defects, was excluded by that policy as well as by all preceding American States' policies. In light of this disposition, the court found it unnecessary to decide whether American States had given adequate notice of the 1984 policy revision excluding losses resulting from contractor negligence. Judgment was entered for the insurer, and the Cartys' motion to vacate was denied.

In their appeal, the Cartys contend the judgment must be reversed because (1) the term "latent defect" cannot be construed to include faulty design, construction or workmanship, (2) American States did not give adequate notice of reduced coverage in the 1984 policy, thus the insureds were entitled to the assertedly broader coverage provided in earlier policies, and (3) under the reasonable expectations test, the Cartys' loss should be deemed to have occurred during the pre-1984 policy period, not in 1988, when appreciable harm was manifested. American States asserts that under any view the judgment is correct because none of the potential predominant causes of the Cartys' loss is covered by any of the policies.

I

We first turn to the potentially dispositive issue of whether the trial court erred in finding the construction defects caused by contractor negligence were latent defects. The Cartys concede, as they must, that if "latent defects" can properly be construed to encompass a contractor's substandard performance, the loss is excluded under all of the policies.

Well-established principles guide us in our review. ■ We interpret the policy independently as a question of law. (*Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1035, fn. 4 [211 Cal.Rptr. 902].) We look first to the language of the policy to determine whether it is ambiguous—susceptible to different interpretations. (See *Garriott Crop Dusting Co.* v. *Superior Court* (1990) 221 Cal.App.3d 783, 790 [270 Cal.Rptr. 678]; *State Farm Mut. Auto. Ins. Co.* v. *Elkins* (1975) 52 Cal.App.3d 534, 538 [125 Cal.Rptr. 139].) "Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms." (*Highlands Ins. Co.* v. *Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 175 [154 Cal.Rptr. 683].)

■ The Cartys argue that under the "weight of authority," the term "latent defect" applies only to "some inherent [but undetectable] defect in

the materials used in construction" and does not include faulty design or work performance. The sole authority they cite for this proposition is *Mattis* v. *State Farm Fire & Cas. Co.* (1983) 118 Ill.App.3d 612, 620 [454 N.E.2d 1156, 1162, 41 A.L.R.4th 1082]. Even if there were no California decisions to guide us, we would give only a passing nod to *Mattis*. Its disposition of the latent defect issue is based on multiple factors, including (1) the insurer's failure to comply with Illinois' pleading statutes, (2) expert testimony that the contractor's negligence would have been contemporaneously apparent had scientific analysis been performed, (3) a theory of contributing causation which our Supreme Court repudiated in *Garvey* v. *State Farm Fire and Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704], and (4) analysis of the issue of fortuity under all-risk policies. *Mattis* is of scant value to our inquiry here.

Moreover, the *Mattis* court's conclusion is at odds with California precedent. In *Acme Galvanizing Co.* v. *Fireman's Fund Ins. Co.* (1990) 221 Cal.App.3d 170 [270 Cal.Rptr. 405], molten zinc caused damage to industrial equipment when a steel kettle ruptured due to what was later determined to have been an inadequately welded seam. Noting a "paucity of California case law interpreting the 'inherent vice/latent defect' exclusionary provision" in insurance policies (*id.* at p. 177), the court looked to the definition set forth in Code of Civil Procedure section 337.15, subdivision (b). Under that statute, a latent deficiency is one "which is not apparent by reasonable inspection." It concluded that "where defective construction, design, or fabrication of property results in the property's failure or deterioration before its normal life, and the defect is not apparent upon reasonable inspection but only after a post-failure examination by an expert, then the resulting loss is caused by a 'latent defect.'" (221 Cal.App.3d at p. 178.)

In its analysis of the issue, the *Acme Galvanizing Co.* court looked to *Tzung* v. *State Farm Fire and Cas. Co.* (9th Cir. 1989) 873 F.2d 1338 for guidance. There, damage to an apartment house was triggered by soil expansion. Experts determined the cause to be improper soil testing and contractor negligence. The court of appeals affirmed summary judgment in favor of the insurer on the basis of the policy's latent defect exclusion. The *Tzung* court observed that "defects in construction may constitute inherent or latent defects if the problems thus created are not readily discoverable." (*Id.* at p. 1342.) It noted the defects in the case before it could not be said to have been "readily discoverable" because the plaintiffs' theory of liability relied entirely on the testimony of experts whose opinions were based on "a thorough examination of the apartment building and the soils beneath it." (*Ibid.*)

We agree with the reasoning of the *Acme Galvanizing Co.* and *Tzung* courts regarding the latent defect exclusion. Here, the first notice the Cartys

had that something was amiss was when, on removing water-soaked carpeting and carpet pads, they discovered cracks in the concrete slab and foundation. The cause of the cracks was not ascertained until expert examination, including soil testing, had been performed. The cause was determined to be inadequate compaction of fill material, inadequate reinforcement of the slab and lack of anchoring of the foundation to bedrock. On the basis of those undisputed facts, the court concluded the construction defects were neither readily observable nor apparent on reasonable inspection. Under *Acme Galvanizing Co.* and *Tzung*, they were latent defects.[1]

We conclude the trial court did not err in finding the latent defect exclusion applicable to the contractor's inadequate performance. Because all editions of the policies, original and revised alike, contained an exclusion for latent defects, American States was not obligated to indemnify the Cartys for their property loss.

## II

■ In light of our disposition of the latent defect issue, we need not reach the Cartys' argument regarding which of the successive policies was on the risk for their loss.[2] However, we briefly address the point.

In *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], the plaintiffs built an apartment complex and, over a period of 15 years, insured it through policies obtained from 4 successive property insurers. In 1985, plaintiffs discovered a foundation and floor slab crack which was determined to have resulted from "expansive soil that caused stress, rupturing the foundation of the building." (*Id.* at p. 680.) Plaintiffs' lawsuit sought to establish that the progressive loss was covered

---

[1]Underlying the Cartys' latent defect argument is an implication that the cause of the loss cannot be *both* a latent defect *and* contractor negligence. The premise is that since the initial policies excluded latent defects and the revised policy added a contractor negligence exclusion, contractor negligence must *not* have been covered under the earlier versions. We reject this notion. *Tzung* v. *State Farm Fire and Cas. Co., supra,* 873 F.2d 1338 is instructive. There, plaintiffs' revised policy contained a specific additional exclusion of risks created by third party negligence. Plaintiffs contended that the new language gave rise to the inference that previous policies did not exclude that risk. The *Tzung* court stated: "We reject the Tzungs' reliance on the revised policy for its negative inferences. Not only do we believe that accepting such an argument would discourage remedial action and thereby violate public policy, [citation], but we also believe that even though the revised policy excludes *all* forms of third-party negligence it does not mean that the former policy does not exclude some forms of third-party negligence, specifically, faulty workmanship." (*Id.* at p. 1341, fn. omitted.]

[2]Nor do we find it necessary to determine whether the notice of policy changes given by American States was adequate to inform the insured of reductions or limitations affecting prior coverage.

under one or more of the policies, and one of the questions was: "[W]hen there are successive insurers, who is responsible for indemnifying the insured for a covered loss when the loss is not discovered until several years after it commences?" (*Id.* at p. 678.) The Supreme Court decided that in such cases, "the manifestation rule applies." (*Id.* at p. 699.) That rule "fixes liability for first party property losses solely on the insurer whose policy was in force at the time the progressive damage became appreciable or 'manifest.'" (*Id.* at p. 694.)

The Cartys attempt to distinguish the *Prudential* decision, contending the manifestation rule applies to disputes among successive carriers, but not to disputes in which the insured makes a claim against a lone insurer who has issued all of the successive policies. The trial court rejected this distinction, finding: "[T]he *Prudential* reasoning should also apply here, there being really no substantial difference between policies by different insurance companies and different policies by the same insurance companies." We agree. The *Prudential* case was decided in the context of the *insureds'* claims, not in a declaratory relief action among insurers, and its analytical focus is on the insurance *policy*, the identity of the insurance company being purely coincidental. Indeed, *Prudential*'s central issue can be paraphrased without any reference to the insurer: When successive policies have been issued, which one covers a loss that is not discovered until several years after it commences?

Finally, the reasons stated by the *Prudential* court for the manifestation rule apply with equal force whether successive policies have been issued by several insurers or by only one. For instance, the rule "'promotes certainty in the insurance industry and allows insurers to gauge premiums with greater accuracy.'" (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 699.) It enables insurers "'to set aside proper reserves for well-defined coverages and avoid increasing such reserves to cover potential financial losses caused by uncertainty in the definition of coverage.' [Citation.]" (*Ibid.*) It ensures that "the reasonable expectations of the insureds are met because they look to their present carrier for coverage." (*Ibid.*) The Cartys do not suggest countervailing salutary purposes, and we can discern none, that would be served by rejection of the manifestation rule in this case. The trial court correctly found the policy in effect at the time the Cartys discovered the cracked slab and foundation covered the property loss if it was not an excluded risk.

We affirm the judgment entered in favor of American States. Respondent shall recover its costs on appeal.

Sills, P. J., and Crosby, J., concurred.