Jerome SAPIRO, Jr. and Cornelia B. Sapiro, Plaintiffs,

v.

ENCOMPASS INSURANCE, Safeco Insurance Company of America, and Does 1–10, inclusive, Defendants.

No. C–03–4587 MHP.

United States District Court, N.D. California.

April 30, 2004.

Neil D. Eisenberg, Eisenberg Law Office, San Francisco, CA, for Plaintiffs.

Jeffry Butler, Cynthia L. Mellema, David R. Simonton, Sonnenschein Nath & Rosenthal, San Francisco, CA, Lori Ann Sebransky, Lombardi, Loper & Conant, LLP, Oakland, CA, for Defendants.

### *MEMORANDUM AND ORDER*

PATEL, Chief Judge.

### Motion to Dismiss; Motion to Strike; Motion for Judgment on the Pleadings

On July 31, 2003, Jerome Sapiro, Jr. and Cornelia Sapiro ("plaintiffs") filed a complaint against Encompass Insurance Compa-

ny ("EIC"), Safeco Insurance Company of America ("Safeco"), and various "Doe" defendants in state court. In pertinent part, plaintiffs' complaint alleges breach of contract, bad faith, and fraud causes of action against all defendants; it also seeks declaratory relief. On October 10, 2003, Encompass removed the action—in its entirety—to this court. *See* 28 U.S.C. §§ 1332, 1441. Safeco has now filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); Encompass has filed a motion asking the court to strike plaintiffs' amended complaint and to enter full or partial judgment on the pleadings. *See* Fed.R.Civ.P. 12(c) & 15(a). The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

## BACKGROUND [1]

### I. *Plaintiffs' Home*

In 1980, plaintiffs hired a contractor to build a substantial addition to their home.[2] Construction of the three-story addition required the building of new "supporting walls," "exterior walls ... covered with stucco," and portions of a "new roof." Compl., at ¶ 6; First Am. Compl., at ¶ 5. The contractor completed the project, but, "[u]nbeknownst to plaintiffs at the time," the contractor performed much of the work negligently. *See* Compl., at ¶ 7; First Am. Compl., at ¶ 6. In fact, the contractor left a "gap" between the "flashing"—i.e., the material used in wall and roof construction to prevent water penetration—and the stucco coating the exterior walls. *Id.*

In August 2002, plaintiffs hired another contractor to remodel and to renovate their home. *See* Compl., at ¶ 8; First Am. Compl., at ¶ 9. During renovation, this new contractor discovered the "gap" between the "flashing" and the stucco. *Id.* Over time, the new contractor reported, moisture had infiltrated this "gap," causing extensive damage to plaintiffs' home. *Id.* None of this damage was perceptible from inside or outside the house; it was only detectable when the contractor exposed the "gap," so plaintiffs knew

nothing of the defect until August 2002. *See* Compl., at ¶¶ 8–10 (adding that the damage required "over $150,000 to repair"); First Am. Compl., 9–11 (same).

## II. *Insurance Coverage*

Beginning on July 1, 1979, plaintiffs insured their home with Continental Insurance Company, the predecessor-in-interest to CNA, which itself was a predecessor-in-interest to Encompass. *See, e.g.,* Compl., at ¶¶ 3, 11–12; First Am. Compl., at ¶¶ 3, 11; Exh. A. Plaintiffs' policy with Continental Insurance expressly applied "only to occurrences or losses during the policy period," *see* Exh. A, at p. 2, and it expired on June 1, 1982. *Id.* at p. 5.

Beginning in 1993, plaintiffs insured their home with Safeco. *See* Compl., at ¶ 13; First Am. Compl., at ¶ 12. Safeco's policy covers "accidental direct physical loss to property," but it contains a number of coverage limitations and exclusions. *See* Compl., at ¶¶ 13, 38; First Am. Compl., 12 & 37; Exh. B. For example, Safeco's policy excludes from coverage any "loss caused directly or indirectly by"

14. planning, construction or maintenance, meaning faulty, inadequate or defective:

 a. planning, zoning, development, surveying, siting;

 b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

 c. materials used in repair, construction, renovation or remodeling; or

 d. maintenance.

*See* Exh. B, at p. 4. The policy also excludes from coverage "water damage, meaning ... water which exerts pressure on, or seeps or leaks through a building," *id.,* and it excludes loss incident to "mold, wet or dry rot." *Id.* at p. 3.

After learning of the "gap," plaintiffs filed insurance claims with both Safeco and En-

---

**1.** Unless otherwise noted, all facts in this section have been culled from the parties' moving papers.

**2.** Plaintiffs' home is located at 30 Balceta Avenue, San Francisco, California. *See* Compl., ¶ 1.

compass. Both claims were denied, and plaintiffs commenced the instant litigation.

### III. *Litigation History*

On July 31, 2003, plaintiffs filed a complaint against Encompass, Safeco, and various "Doe" defendants in state court. The complaint states four causes of action and seeks declaratory relief against all defendants. The first two causes of action allege that Encompass breached its contract with plaintiffs, acted in bad faith, and engaged in fraud; the last two causes of action allege that Safeco did the same. On October 9, 2003, Encompass filed an answer to plaintiffs' complaint in state court.[3] *See* Notice of Removal, Exh. 1. The next day, Encompass removed the action—in its entirety—to this court. *See* 28 U.S.C. §§ 1332, 1441. On February 19, 2004, Safeco filed an initial motion to dismiss, asking the court two dismiss plaintiffs' third and fourth causes of action (that is, the two causes of action focusing on Safeco's conduct) under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs did not file an opposition to Safeco's motion, opting instead to submit an amended complaint on March 19, 2004. *See generally* First Am. Compl. Ten days later, Encompass filed a motion asking the court to strike plaintiffs' amended complaint and to enter complete or partial judgment on the pleadings. *See* Fed. R.Civ.P. 12(c) & 15(a). On March 29, 2004, Safeco modified its motion to dismiss in light of plaintiffs' amended complaint, and the court has consolidated the pending motions for review.

### LEGAL STANDARDS

#### I. *Motions to Dismiss and Motions for Judgment on the Pleadings*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive mer-

its—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002).[4] Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) (citation omitted); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When assessing a Rule 12(b)(6) motion, the court must accept as true "all material allegations of the complaint," and all reasonable inferences must be drawn in favor of the non-moving party. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996) (citation omitted). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro,* 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988)).

In a like vein, under Federal Rule of Civil Procedure 12(c) permits a court to enter judgment on the pleadings where the moving party clearly establishes that, based on the face of the pleadings, it is entitled to judgment as a matter of law. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989). When considering a Rule 12(c) motion, the court must accept all material allegations in the complaint as true, and it must resolve all doubts in the light most favorable to the non-moving party. *See, e.g., NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

#### II. *Motions to Strike*

Under Federal Rule of Civil Procedure 12(f), a court may strike a pleading—or any portion thereof—that is "redundant, impertinent, or scandalous." Fed.R.Civ.P. 12(f). Rule 12(f) motions are generally disfa-

---

3. To the court's knowledge, Safeco did not file an answer to plaintiffs' complaint.

4. If "a district court considers evidence outside the pleadings" when deciding a Rule 12(b)(6) motion, the court "must normally convert the

[Rule] 12(b)(6) motion into a [Federal Rule of Civil Procedure] 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003).

vored, and the remedy of striking a pleading is to be used when necessary to discourage parties from raising allegations completely unrelated to the relevant claims and when the interests of justice so require. *See Augustus v. Bd. of Public Instruction*, 306 F.2d 862, 868 (5th Cir.1962); *see also Federal Deposit Ins. Corp. v. Niblo*, 821 F.Supp. 441, 449 (N.D.Tex.1993) (noting that rule 12(f) motions will be granted when necessary to discourage parties from filing "dilatory" pleadings and papers).

## DISCUSSION

Defendants' various motions raise three questions: First, whether the court should strike all or part of plaintiffs' amended complaint; second, whether Encompass is entitled to judgment on the pleadings; and, third, whether plaintiffs fail to state a legally tenable claim against Safeco. The court addresses each question separately below.[5]

### I. Plaintiffs' Amended Complaint

▮ Federal Rule of Civil Procedure 15(a) allows a party to amend its "pleading once as a matter of course at any time before a responsive pleading is served." *See* Fed. R.Civ.P. 15(a). After a responsive pleading has been filed, a party may still amend its pleading, but "only by leave of court or by written consent of the adverse party." *Id.* (adding that "leave [to amend] shall be freely given when justice so requires"); *see generally Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir.2003). On occasion, a party's failure to comply with the requirements of Rule 15(a) will prompt courts to strike amended pleadings—or to ignore them outright. *See, e.g., Vasquez v. Johnson County Housing Coalition, Inc.*, 2003 WL 21479186, *1 (D.Kan.2003); Fed. R.Civ.P. 12(f). But many courts have accepted untimely amended pleadings, even when the relevant party did not first obtain judicial permission or the consent of the opposing party. *See, e.g., Straub v. Desa Indus., Inc.*, 88 F.R.D. 6, 8 (M.D.Pa.1980). This is often true when "leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change." *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1484, at 601–02 (2d ed.) (footnotes omitted) (observing that "[p]ermitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing need formalities").

▮ There is no question that plaintiffs failed to comply with the precise terms of Rule 15(a). Both Encompass and Safeco "served" "responsive pleading[s]" *before* plaintiffs amended their complaint: Encompass filed an answer to plaintiffs' complaint in state court, and Safeco filed a motion to dismiss in this court. *See also* Fed.R.Civ.P. 81(c) ("Repleading is not necessary unless the court so orders."). There is also no question that plaintiffs amended their complaint without first obtaining leave of the court or the clear consent of all defendants; they amended, instead, in response to Safeco's initial motion to dismiss. *But cf.* Pl.'s Opp., at p. 2 (contending that Encompass need not have consented because all changes concerned Safeco, which did consent). The only question, then, is whether the court should accept plaintiffs' amended complaint *despite* plaintiffs' failure to abide Rule 15(a). *Cf. Bell v. Executive Committee of United Food and Commercial Workers Pension Plan For Employees*, 191 F.Supp.2d 10, 12 (D.D.C.2002). The court finds that it should.

---

**5.** Throughout their opposition papers, plaintiffs devote substantial attention to supposed procedural problems with the pending motions, accusing Encompass and Safeco of "sharp" litigation practices. But neither defendant has behaved inappropriately, and none of the pending motions are improperly before the court. Encompass' motion for judgment on the pleadings is not premature or deserving of sanctions; both defendants have responded to plaintiffs' complaint (Encompass' with an answer, Safeco with a motion to dismiss), and the relevant issues are suitably defined for court review. Likewise, Safeco's resubmission of its motion to dismiss *after* plaintiffs amended their complaint does not prejudice plaintiffs or bespeak a problematic approach to this litigation. If anything, plaintiffs' focus on defendants' litigation practice attempts to obscure the deficiencies in plaintiffs' own pleadings. If anything, in fact, it is *plaintiffs* who are flouting this court's rules.

The Supreme Court has long counseled that leave to amend should be "freely given," particularly "[i]n the absence of any apparent or declared reason [to deny amendment]— such as undue delay, bad faith, [a] dilatory motive on the part of the [amending party], ... undue prejudice to the opposing party ..., [or] futility." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Eminence Capital*, 316 F.3d at 1052 (noting that "it is the consideration of prejudice that carries the greatest weight"). None of these "apparent or declared reason[s]" obtain here. Nothing in the record suggests that plaintiffs are litigating in bad faith or that acceptance of plaintiffs' amended complaint will spur "undue delay." *Id.* Nor does anything in the record suggest that defendants will suffer "undue prejudice"—or any real prejudice at all—should this court accept plaintiffs' amended complaint. Encompass' own motion to strike even confirms as much, acknowledging that "the allegations of the First Amended Complaint are largely identical to those found in the original Complaint." *See* Encompass Mot., p. 4 n. 1. Under Rule 15, there is no compelling reason to disregard plaintiffs' amended complaint. *See Eminence Capital*, 316 F.3d at 1052 (favoring amendment "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors"); *Bell*, 191 F.Supp.2d at 13 ("Defendants have offered no real basis to conclude that the amended complaint was served for the purpose of undue delay, in bad faith, because of a dilatory motive, or as a result of a repeated failure to cure previous defects.... Accordingly, plaintiffs' amended complaint is proper under Rule 15(a).").

■ That Rule 12(f) is to be applied sparingly buttresses this conclusion. *See* Fed. R.Civ.P. 12(f). Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations. *See Augustus*, 306 F.2d at 868. However tardy and conclusory they may be, plaintiffs' new claims are not wholly specious, and plaintiffs inattention to procedural detail has not prejudiced defendants in any cognizable way. Encompass' motion to strike plaintiffs' amended complaint is denied accordingly. Leave to amend plaintiffs' complaint is granted *nunc pro tunc.* *See* Fed. R.Civ.P. 15(a); *Bell*, 191 F.Supp.2d at 12 (granting a similar motion in a similar fashion).

## II. *Encompass' Motion For Judgment On the Pleadings*

■ For the purposes of Encompass' motion for judgment on the pleadings, however, the amendment to plaintiffs' complaint makes no significant difference. *See* Encompass Mot., p. 4 n. 1. (noting that, with respect to Encompass, "the allegations of the First Amended Complaint are largely identical to those found in the original Complaint"). Over ten years ago, the California Supreme Court articulated a "manifestation of loss rule" in the insurance context. *See especially Prudential–LMI Commercial Ins. v. Superior Court*, 51 Cal.3d 674, 699, 274 Cal. Rptr. 387, 798 P.2d 1230 (Cal.1990). Under this "manifestation rule," liability in "first party progressive property loss cases" falls completely on the insurer of the property at the time the loss "manifests"—that is, at "that point in time when appreciable damage occurs *and is or should be known to the insured,* such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Id.* (emphasis added); *see also Larkspur Isle Condominium Owners' Assn., Inc. v. Farmers Ins. Group*, 31 Cal.App.4th 106, 109–10, 37 Cal.Rptr.2d 3 (Cal.App.1994) ("[T]he insurer on the loss at the time of appreciable damage is responsible for the entire loss, not only that portion discovered during the policy period."). "Once a loss is manifested," the California Supreme Court has explained, "an event has occurred that triggers indemnity unless such event is specifically excluded under the policy terms." *Prudential–LMI*, 51 Cal.3d at 699, 798 P.2d 1230 (noting that insurer liability closely follows). Thus, the insurer at the time this "event ... occur[s]" is liable for any and all loss not otherwise excluded from coverage. *Id.*

■ The parties agree that this action is, like *Prudential–LMI*, a "first party" insurance action. *Cf. Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.

Rptr.2d 324, 913 P.2d 878 (Cal.1995) (exploring the many differences between "first party" and "third party" insurance contracts). The parties also agree that this action is, like *Prudential–LMI*, a property damage case—and that plaintiffs first learned of the relevant loss sometime in August 2002, more than 20 years after Encompass' policy expired. *See* Exh. A (expiring in June 1982); *see* First Am. Compl., at ¶ 8 ("Plaintiffs neither knew of the defect, nor had any reason to suspect there was a defect, until advised of it in August 2002."); *cf., e.g., Stanton Road Assoc. v. Pacific Employers Ins. Co.,* 36 Cal. App.4th 333, 43 Cal.Rptr.2d 1 (Cal.App.1995); *Carty v. American States Ins. Co.,* 7 Cal. App.4th 399, 9 Cal.Rptr.2d 1 (Cal.App.1992).[6] In fact, the parties even agree that the pertinent "construction defect [ ] resulted in extensive damage to plaintiffs' home[, as] moisture had entered the home for over 20 years, causing extensive damage." *See* First Am. Compl., at ¶ 9.

But *plaintiffs* do not agree that the relevant loss "manifest" in the way *Prudential–LMI* requires, nor that this action is, as defendants claim, "progressive loss" case. *Id.* Both parts of plaintiffs' argument are unconvincing. The relevant loss(es) did indeed "manifest" in this instance—and they did so in a way fully contemplated by *Prudential–LMI. Id.* Neither party suggests, and the court does not mean to imply, that the damage to plaintiffs' home "manifested"—i.e., "reveal[ed] itself"—unassisted; rather, the damage was discovered through the "direct investigation" of a contractor. *See* Pl.'s Opp., at p. 4–5. But California's courts do not require that "manifestation" occur without any human activity or intervention whatsoever. *See Prudential–LMI,* 51 Cal.3d at 698, 274 Cal.Rptr. 387, 798 P.2d 1230. Instead, California's courts have defined the phrase "manifestation of the loss" to be synonymous with "inception of the loss"—that is, the "point in time when appreciable damage occurs and *is or should be known to the insured,* such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Central National Ins. Co. v. Superior Court,* 2 Cal.App.4th 926, 933–34, 3 Cal.Rptr.2d 622 (Cal.App.1992) (citing *Prudential–LMI,* 51 Cal.3d at 699, 274 Cal.Rptr. 387, 798 P.2d 1230) (internal quotation marks omitted; emphasis added). Plaintiffs cannot dispute that "appreciable damage" has occurred to their home, whether it was first located by a contractor or not. Nor can plaintiffs dispute

---

**6.** The court is mindful, of course, that plaintiffs' complaint contends that the Encompass policy "was an occurrence policy, the terms of which did not require that damage be discovered during the actual term of the policy." *See* First Am. Compl., at ¶ 16. Encompass does not, regrettably, even mention this "occurrence policy" argument in its papers. California law does occasionally distinguish between "occurrence" and "claims-made" policies, noting that the former are generally *not* subject to *Prudential–LMI's* "manifestation rule." *See Montrose,* 10 Cal.4th at 663–65 & 674, 42 Cal.Rptr.2d 324, 913 P.2d 878; *Armstrong World Indus., Inc. v. Aetna Casualty & Surety Co.,* 45 Cal.App.4th 1, 39–40, 52 Cal.Rptr.2d 690 (Cal.App.1996) ("Because occurrence policies (as distinguished from claims-made policies) cover occurrences that result in injury during the policy period, the courts in California ... have concluded that the policies are invoked, or triggered, when the injury takes place.") (citations and internal quotation marks omitted). But the relevant question is *not* whether Encompass' policy might be characterized as an "occurrence policy" or a "claims-made" one. Rather, the important question—as California's courts make plain—is whether the action involves a "first party progressive party loss" instead of some form of "third party" claim (e.g., a

CGL policy). Neither *Prudential–LMI* nor any of its progeny suggest—let alone *hold*—that the "manifestation rule" is inapplicable to a "first party" claim simply because of some ambiguous policy language. Under *Prudential–LMI,* as long as the action concerns "first party progressive property damage," the "manifestation rule" controls. *See Prudential–LMI,* 51 Cal.3d at 678–79, 274 Cal.Rptr. 387, 798 P.2d 1230 ("[W]e conclude that in a first party property damage case (i.e., one involving no third party liability claims), the carrier insuring the property at the time of manifestation of property damage is solely responsible ...."); *Montrose,* 10 Cal.4th at 663, 42 Cal.Rptr.2d 324, 913 P.2d 878 (noting that the "occurrence policy" moniker applies in the *third-party* policy context; explaining that "a first party insurance policy provides coverage for loss or damage sustained directly by the insured" while a "third party liability policy ... provides coverage for liability of the insured to a third party") (citation and internal quotation marks omitted); *see also Anthem Electronics, Inc. v. Pacific Employers Ins. Co.,* 302 F.3d 1049, 1055 (9th Cir.2002) (discussing "occurrences" in the context of a CGL / third-party policy). In this limited sense (at least), plaintiffs' "occurrence policy"-"claims-made policy" dichotomy is a false one.

that this damage is now "known to [them]" such that they were made aware of their relevant "notification duty." *Id.* Under California law, then, the relevant damage is—and was—sufficiently "manifest" when discovered and reported by plaintiffs' second contractor. *Id.*

■ And under California law, the relevant damage was "progressive" as well. *See Prudential–LMI,* 51 Cal.3d at 679, 274 Cal. Rptr. 387, 798 P.2d 1230 (limiting its holding to "first party *progressive* property loss cases in the context of a homeowners insurance policy") (emphasis added); *Stanton Road,* 36 Cal.App.4th at 333, 43 Cal.Rptr.2d 1; *Carty,* 7 Cal.App.4th at 399, 9 Cal.Rptr.2d 1. In a strained attempt to prove *Prudential–LMI* inapposite, plaintiffs read their complaint to identify a number of losses growing from a series of discrete events—not one gradually "progressing" incident.[7] *See* Pl.'s Opp., at p. 3 ("The complaint is entirely silent as to which part of the house was damaged, how it was damaged or when it was damaged. It takes no position as to whether the home was damaged through incidents or progressive damage."). But plaintiffs' complaint does not favor such a tortured reading; in fact, plaintiffs' complaint does not even *permit* such a reading. *Id.* Without equivocation, plaintiffs allege that the "gap" permitted moisture to enter the home "over 20 years" (i.e., progressively), "causing extensive damage" to plaintiffs' home. *See* First Am. Compl., at ¶ 9. This is *not* silence as to "how" or "when" plaintiffs' house was damaged, nor is it silence as to whether the home suffered "progressive damage."[8] *Cf.* Pl.'s Opp., at p. 3. It is,

rather, a plain allegation—and acknowledgment—that the damage to plaintiffs' home was "progressive." This is precisely the context in which *Prudential–LMI's* "manifestation rule" applies. *See, e.g., Prudential–LMI,* 51 Cal.3d at 679 & 695, 274 Cal.Rptr. 387, 798 P.2d 1230 (noting that, for decades, "the question of whether the insurer was liable for the loss" has been treated as "a *legal* rather than factual issue") (citation omitted; emphasis added); *cf. Central National,* 2 Cal.App.4th at 934, 3 Cal.Rptr.2d 622 (noting that where a party claims "that the damage ... was *not* continuing and progressive but was a series of discrete events, ... [i]t cannot be said, as a matter of law, that *Prudential–LMI's* rule for continuing and progressive loss is applicable ...") (emphasis in original).

When considering Rule 12 motions, courts are required to accept the allegations in a complaint as true, drawing all reasonable inferences in favor of the non-moving party. *See Lewis,* 87 F.3d at 1545 (citation omitted); Fed.R.Civ.P. 8(a)(2) (requiring only "a short plain statement of the claim showing that the pleader is entitled to relief"). This does not mean, however, that courts must ignore what complaints actually say, nor does it invite plaintiffs to use clever omissions[9] and cynical pleading practices to overcome otherwise valid motions to dismiss. *See, e.g., McHenry v. Renne,* 84 F.3d 1172, 1177 (9th Cir.1996) (noting that a complaint must "set[ ] forth who is being sued, for what relief, and on *what theory,* with enough detail to guide discovery")(emphasis added). In their complaint, plaintiffs allege "progressive" property damage. *See* First Am. Compl., at ¶¶ 6–9

---

7. The "gap," plaintiffs claim, may have permitted water and fungal infiltration, which caused extensive damage somehow independently.

8. Nor is this a "grafting" of particular facts into plaintiffs' complaint. Plaintiffs have pled—and repled—a type of "progressive" loss. At this stage of litigation, the court is obligated to take plaintiffs' pleadings as true. Plaintiffs' reference to facts omitted (perhaps intentionally) from the complaint does not change the court's task, particularly when those supposed omissions are more strategic and illusory than real.

9. Plaintiffs' supposed silence is substantially overstated; the complaint says far more than plaintiffs now suggest. But even if plaintiffs'

claims of silence were valid, the court would not be compelled to deny Encompass' Rule 12(c) motion. Rule 12 requires courts to read all allegations in the light most favorable to the non-moving party, but it does *not* demand that courts create entirely new, unsupported allegations on the non-moving party's behalf. At a minimum, a complaint is required to "set[ ] forth who is being sued, for what relief, and on *what theory,* with enough detail to guide discovery." *McHenry v. Renne,* 84 F.3d 1172, 1177 (9th Cir.1996) (emphasis added). Plaintiffs' putative silence would not even satisfy this baseline standard.

(discussing, repeatedly, losses growing from a single predicate act, viz., the contractor's leaving of the "gap"). *Prudential–LMI's* "manifestation rule" thus applies as a matter of law, and Encompass' motion for judgment on the pleadings must be granted. *See* Fed. R.Civ.P. 12(c).[10]

### III. Safeco's Motion to Dismiss

Safeco's motion to dismiss must be granted as well, albeit for different reasons. Neither party disputes that Safeco's policy was in effect at the time the relevant loss "manifest." *Id.* Nor does either party tenably dispute that negligent workmanship proximately caused[11] the damage to plaintiffs' home. *Cf. Tento Int'l, Inc. v. State Farm Fire & Casualty Co.*, 222 F.3d 660, 662–63 (9th Cir.2000) (discussing "efficient proximate cause").[12] All the court must determine, then, is whether provisions (i.e., exclusions) of Safeco's policy preclude recovery as a matter of law.

Three provisions of Safeco's policy are particularly relevant here. The first provision, commonly referred to as a "faulty workmanship" clause, excludes from coverage "building losses" incident to

... planning, construction or maintenance, meaning faulty, inadequate or defective:

 a. planning, zoning, development, surveying, siting;

 b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

 c. materials used in repair, construction, renovation or remodeling; or

 d. maintenance.

*See* Exh. B, at p. 4. The second provision excludes from coverage "water damage, meaning ... water which exerts pressure on, or seeps or leaks through a building." *Id.* And the third excludes loss caused by "mold, wet or dry, rot." *Id.* at p. 3. According to Safeco, these three exclusions unequivocally prevent plaintiffs from recovering for the types of loss they now allege. All of plaintiffs' putative losses were a result of negligent construction, Safeco contends, so the policy's "faulty workmanship" exclusion controls.[13]

The Ninth Circuit has held that unambiguous and conspicuous "faulty workmanship" clauses will exclude "losses caused by defects in the design and construction of a building." *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989). The Ninth Circuit has also held that ambiguous or inconspicuous "faulty workmanship" clauses do not necessarily preclude recovery, but there are no ambiguity or conspicuousness problems here. *Cf. Tento Int'l*, 222 F.3d at 663 (holding that a "faulty workmanship" clause's concluding provisos—viz., references to other sections, use of the limiting term "in this section"—made the clause ambiguous); *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449–51 (9th Cir.1991) (declaring a "faulty workmanship" clause ambiguous because it could have covered either faulty "product" or flawed "process"). Safeco's "faulty workmanship" clause appears prominently in the policy "exclusion" section, and the clause's language is sweeping and seemingly unequivocal: *All* "faulty, inadequate or defective" "planning, *construction* or mainte-

---

**10.** Because the court grants Encompass' motion on the pleadings in full, it need not consider Encompass' alternative motion for partial judgment on the pleadings.

**11.** As Safeco correctly notes, analysis of "efficient proximate cause" is largely irrelevant where, as here, plaintiffs have alleged but one cause. *See Pieper v. Commercial Underwriters Ins. Co.*, 59 Cal.App.4th 1008, 1020, 69 Cal. Rptr.2d 551 (Cal.App.1997). And even assuming that more than one cause exists, the negligent contracting is still the "efficient proximate" one—and it is, without question, the predominating and most prominent one. *See Tento Int'l*, 222 F.3d at 662.

**12.** In their first amended complaint, plaintiffs do suggest that some loss is attributable to "other accidental causes covered by the policies." *See* First Am. Compl., at ¶ 7. But nowhere in any of their papers do plaintiffs identify these putative "other accidental causes," nor how such causes might have impacted the relevant property damage or insurance policy. As Safeco correctly notes, allegations of "other accidental causes" do not, without more, warrant coverage under Safeco's policy, and they do not overcome a Rule 12 motion.

**13.** Any recovery plaintiffs are due, Safeco adds, must come from the negligent contractor.

nance" is excluded under the clause, including "design, ... *workmanship,* ... *construction,* renovation, [and] remodeling," as are *"materials used* in ... construction, renovation or remodeling." *See* Exh. A, at p. 4 (emphasis added). What plaintiffs' allege in their first amended complaint—namely, negligent construction resulting in a "gap" between the "flashing" and the stucco coating of their home—is exactly what Safeco's "faulty workmanship" clause unambiguously covers. *Cf. Tzung,* 873 F.2d at 1340–41 ("[O]nly a strained interpretation of the exclusion for faulty workmanship would permit recovery for losses caused by the negligent design and construction of the ... building.").

■ Safeco's "faulty workmanship" clause does, of course, note that "any ensuing loss not excluded or excepted ... is covered." *See* Exh. A., at p. 4 (emphasis added); *cf. Tento,* 222 F.3d at 663; *Allstate,* 929 F.2d at 450. But Safeco's short proviso does not make Safeco's "faulty workmanship" clause *de facto* ambiguous, *see Tzung,* 873 F.2d at 1340, nor does it entitle plaintiffs to recovery for any of their alleged "ensuing" losses. In their amended complaint and during oral argument, plaintiffs have alleged a number of supposed "ensuing losses"—viz., a specific type of water damage, damage caused by "fungi," a selection of unspecified health concerns, and the cost of "reconstructing" the home. *See* First Am. Compl., at ¶¶ 7 ("This moisture had caused ...."), 9 ("Moisture had entered the home ...."), & 31 ("... conditions that caused a variety of fungi, ... and the insureds' family were endangered by health hazards"). All of these putative losses, plaintiffs claim, differ significantly from specific damage related directly to the "gap." The court cannot agree.

California's courts have long defined an "ensuing loss" as a loss "separate" and "independent" "from [an] original peril." *See Acme Galvanizing Co. v. Fireman's Fund*

*Ins. Co.,* 221 Cal.App.3d 170, 179–80, 270 Cal.Rptr. 405 (Cal.App.1990) (emphasis added). Plaintiffs' losses are neither; they are, rather, abstrusely phrased reformations of the same "gap"-related losses—losses plaintiffs concede are excluded by Safeco's "faulty workmanship" clause. *See* Pl.'s Opp., at p. 7. In fact, none of the supposedly "ensuing losses" plaintiffs identify can be categorized as "ensuing losses," if even "losses" at all. *Id.* Plaintiffs' alleged "moisture" and "fungal" losses are directly attributable to the initial negligent contracting. Plaintiffs' "reconstruction" costs are neither separate nor "ensuing" by any legitimate measure; they are the price of repairing the predicate damage.[14]

■ In addition, plaintiffs' supposed "ensuing losses" are excluded from coverage by other portions of Safeco's policy. *See* First Am. Compl., at ¶¶ 7, 9, & 31 (discussing cursorily "moisture," "fungi," and health issues); Exh. A, at pp. 3–4. Plaintiffs allege, for example, "moisture"-caused damage based on the intrusion of water into the "gap." *See* First Am. Compl., at ¶¶ 6–9. Safeco's policy excludes precisely this type of damage, disclaiming responsibility for "water damage" incident to "pressure ... or seep[age] or leak[age] through a building." Likewise, Safeco's policy excludes losses caused by "mold, wet or dry rot." *See* Exh. A, at pp. 3–4. Plaintiffs' allegations of "fungi damage" are effectively—and legally—identical to such losses, and plaintiffs' facile pleading does not suggest otherwise. *Compare* Pl.'s Opp., at p. 8 ("[T]he word mold does not appear anywhere in the complaint."), *with Jordan v. Allstate Ins. Co.,* 116 Cal.App.4th 1206, 1218, 11 Cal.Rptr.3d 169, 178 (2004) ("[T]he term 'wet or dry rot' *embraces damage or decay caused by fungus.*") (emphasis added). In fact, the only losses plaintiffs allege that are *not* explicitly excluded by Safeco's policy are unelaborated health risks—ostensibly (though not clearly) those precipitated by the moisture and mold. *See*

14. Despite plaintiff's repeated protestations during oral argument, *Palub v. Hartford Underwriters Insurance Company,* 92 Cal.App.4th 645, 112 Cal.Rptr.2d 270 (Cal.App.2001) (published in part), is not to the contrary. *Palub* makes clear that "where a loss occurs through a concurrence of covered perils and perils that are not covered, the insurer is [still] liable if a covered peril is the efficient proximate cause ... of the loss." *Id.* at 650, 112 Cal.Rptr.2d 270. But none of the perils alleged in plaintiffs' complaint are "covered"; they are all excluded by the express terms of Safeco's policy. *Palub* is thus inapposite.

First Am. Compl., at ¶ 9. But Safeco's policy does not cover such amorphous, prospective harms. Safeco's policy insures against actual "bodily harm, sickness or disease"—that is, physical harms actually suffered. *See* Exh. A., p. 1. The policy does not protect against potential, threatened, and entirely conjectural health concerns alone. *Id.* At most, plaintiffs' allegations of unspecified "health risks" qualify as potential and conjectural harms. They do not qualify as the type of actual "bodily harm, sickness or disease" that the Safeco policy covers.

 The court is mindful that exclusions in insurance policies are to be strictly construed. *See, e.g., MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003). The court is also mindful that Rule 12(b)(6)'s motions should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Lewis,* 87 F.3d at 1545. But plaintiffs fail to allege any facts entitling them to recovery under the unambiguous terms of Safeco's policy;[15] instead, plaintiffs offer a series of imprecise and (perhaps intentionally) vague assertions, none of which justify recovery or relief. Even under the most liberal pleading standards, plaintiffs' allegations fail to state a ground upon which relief can be granted. *See* Fed.R.Civ.P. 8 & 12(b)(6); *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir.2001) (noting that complaints are not to be used as the hook for protracted "fishing expeditions"). As a result, Safeco's motion to dismiss must be granted.

**15.** In briefing the motions *sub judice,* plaintiffs attempt to cure the deficiencies in their complaint by making a round of new allegations; e.g., plaintiffs argue that a series of "discreet [sic]" events caused damage to their home, not one "progressive" event. Given plaintiffs' avowed "silence" in their complaint, these arguments are both novel and curiously opportunistic. Plaintiffs seem inclined to use inexpert complaint drafting as a litigation strategy. Such gamesmanship displeases the court, and plaintiffs are directed to avoid it.

**16.** The court is mindful that plaintiffs have already amended their complaint once, adding a number of vague allegations not always consistent with their original complaint. Still, to give plaintiffs the opportunity to amend in light of the

*CONCLUSION*

For the foregoing reasons, Encompass' motion to strike is DENIED; Encompass' motion for judgment on the pleadings is GRANTED; and Safeco's motion to dismiss is also GRANTED. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE.[16]

IT IS SO ORDERED.

court's analysis, the court dismisses plaintiffs' complaint *without* prejudice. This disposition best comports with prevailing Ninth Circuit practice, *see, e.g., Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 674 (9th Cir.1981) (" 'Courts have been reluctant to impose the ultimate sanction of dismissal with prejudice' " because rule 41(b) is a harsh remedy, and " 'sometimes the fault lies with the attorney rather than the litigant.' ") (citations omitted), and it offers plaintiffs an opportunity to include tenable legal theories in their papers—not just clever omissions and cynical silences. Should plaintiffs opt to amend, they are directed to posit *consistent* legal theories and logically tenable allegations of fact; they are not change litigation strategies yet again.